## Barent G. Staats *against* the Executors of Ten Eyck.

ON the 7th of *January* 1793, the testator, *Barent Ten Eyck*, by indenture of release, in consideration of £.700, granted, bargained, and sold to the plaintiff, and one *Dudley Walsh* in fee, two lots of ground in the city of *Albany* covenanting, " That he " the grantor was the true and lawful owner, that he was lawfully " and rightfully seised in his own right of a good and indefeasible " estate of inheritance in the premises, that he had full power " to sell in fee simple, and that the grantees should for ever " peaceably hold and enjoy the premises without the interruption " or eviction of any person whatever, lawfully claiming the same." In the month of *May* following, *Walsh*, for a valuable consideration conveyed his moiety of these lots to *Staats*, who, on the 30th of *October* 1802, after due possession, by lease and release granted one of them to *Margaret Chim* in fee, and covenanted to warrant and defend her in the peaceable possession thereof. In *August* 1803, an ejectment was brought against *Margaret Chim*, in which a judgment was obtained for a moiety of the lot sold to her, execution sued out, and this followed by a recovery in an action for the mesne profits. The value of the lot, from the moiety of which *Margaret Chim* was thus evicted, was at the time of the sale by *Ten Eyck*, £. 300, and that was the consideration paid for it. *Margaret Chim*, being thus evicted, brought her action against the plaintiff, and recovered for the moiety she had lost.

Upon these facts, which were submitted without argument, the following questions were raised for the determination of the court, 1st, Whether the plaintiff was entitled, under the covenants in *Ten Eyck's* release, to recover any more than a moiety of the

*Under a covenant of ownership, seisin, power to sell, and for peaceable enjoyment, if the vendee be evicted, he can recover only the value of the land at the time of the purchase, with interest for so long a time as he pays mesne profits, and the costs of the ejectment that may be brought against him, but not those of the action for mesne profit.*

NEW-YORK,
May, 1805.

B. G. Staats
v.
Executors of
Ten E\ck.

consideration money paid for the lot from which *Margaret Chim* was evicted? 2d, Whether the interest of that consideration, and the increased value of the premises from the date of the deed to *M. Chim*, ought to be added? 3d, Whether the plaintiff was entitled to any retribution for the costs and damages he had sustained by the eviction and recoveries before mentioned?

KENT, C. J. This case resolves itself into these two points for inquiry. 1st, Whether, upon the covenants, the plaintiff be entitled to recover the value of the moiety of one lot at the time of eviction, or only at the time of the purchase, and to be ascertained by the consideration given? 2d, If the latter be the rule of damages, then, whether the plaintiff be also entitled to recover interest upon the purchase money, and the costs of the eviction?

1—There are two covenants contained in the deed; the one, that the testator was seised in fee, and had good right to convey; the other, that the grantee should hold the land free from any lawful disturbance or eviction. The present case does not state distinctly, whether the eviction was founded upon an absolute title to a moiety of one lot, or upon some temporary incumbrance. But I conclude from the manner of stating the questions, and so I shall assume the fact to be, that the testator was not seised of the moiety so recovered when he made the conveyance, and had no right to convey it. The last covenant cannot then, in this case, have any greater operation than the first, and I shall consider the question as if it depended upon the first covenant merely.

At common law, upon a writ of *warrantia chartæ*, the demandant recovered in compensation, only for the land at the time of the warranty made, and although the land had become of increased value afterward, by 'the discovery of a mine, or by buildings, or otherwise, yet the warrantor was not to render in value according to the state of things, but as the land was when the warranty was made. *Bro. abr. tit. Voucher pl.* 69. *Ibid. tit. recouver in value. pl.* 59 22 *Vin.* 144, 5, 6. *Tb. pl.* 1, 2, 9. *Ub. pl.* 1, 2, 3. 1 *Reeves' Eng. Law*, 448. This recompense in value, on *excambium* as it was anciently termed, consisted of lands of the warrantor, on which his heir inherited from him, of equal value with the land from which the feofee was evicted. *Glanville G.* 3. *c.* 4. *Bracton* 384. *a. b.* That this was the ancient, and uniform rule of the English law, is a point as I apprehend, not to be questioned

yet, in the early ages of the feudal law on the continent, as it appears, *Feudorum lib.* 2 *tit.* 25, the lord was bound to recompense his vassal on eviction, with other lands equal to the value of the feud at the time of eviction ; "*feudum restituat ejusdem æstimationis quod* " *erat tempore rei judicatæ.* But here is no evidence that this rule ever prevailed in *England,* nor do I find, in any case, that the law has been altered since the introduction of personal covenants, to the disuse of the ancient warranty. These covenants have been deemed preferable, because they secure a more easy, certain, and effectual recovery. But the change in the remedy did not affect the established measure of compensation, nor are we at liberty now to substitute a new rule of damages from mere speculative reasoning, and that too of doubtful solidity. In warranties upon the sale of chattels the law is the same as upon the sale of lands, and the buyer recovers back only the original price. 1 *H. Black.* 17. This is also the rule in *Scotland,* as to chattels. 1 *Ersk.* 206. Our law preserves in all its branches symmetry and harmony upon this subject. In the modern case of *Flureau* v. *Thornhill,* 2 *Black. rep.* 1078, the court of K. B. laid down this doctrine, that upon a contract for a purchase of land, if the title prove bad, and the vendor is without fraud incapable of making a good one, the purchaser is not entitled to damages for the fancied goodness of his bargain. The return of the deposit money with interest and costs was all that was to be expected.

Upon the sale of lands the purchaser usually examines the title for himself, and in case of good faith between the parties (and of such cases only I now speak) the seller discloses his proofs and knowledge of the title. The want of title is therefore, usually a case of mutual error, and it would be ruinous and oppressive, to make the seller respond for any accidental or extraordinary rise in the value of the land. Still more burthensome would the rule seem to be if that rise was owing to the taste, fortune or luxury of the purchaser. No man could venture to sell an acre of ground to a wealthy purchaser, without the hazard of absolute ruin. The hardship of this doctrine has been ably exposed by lord *Kaimes* in his examination of a decision in the Scotch law, that the vendor was bound to pay according to the increased value of the land, 1 *Kaimes' Eq.* 284 *to* 303. 1 *Ersk.* 206.

If the question was now *res integra,* and we were in search of a fit rule for the occasion, I know of none less exceptionable than the one already established. By the civil law the seller was

P

bound to restore the value of the subject at the time of eviction, but if the thing had been from any cause sunk below its original price, the seller was entitled to avail himself of this and pay no more than the thing was then worth ; for the Roman law, with its usual and admirable equity made the rule equal and impartial in its operation.   It did not force the seller to bear the risk of the rise of the commodity without also taking his chance of its fall.   *Dig. lib.* 21. *tit.* 2, *l.* 71, *ibid. l.* 66, §. 3.   *Ibid. l.* 64. §. 1. So far the rule in that law appeared at least clear and consistent, but with respect to beneficial improvements made by the purchaser, the divisions in the *Code* and *Pandects* are jarring and inconsistent with each other, and betray evident perplexity on this difficult question.   *Dig. lib.* 19. *tit.* 1. 45. §. 1. *Cod. lib.* 8. *tit.* 45. *l. q.* and *Perezius* thereon.   The more just opinion seems to be, that the claimant himself, and not the seller ought to pay for them, for *nemo debet locupletari alienâ jacturâ* and this rule has, according to lord *Hardwicke*, been several times adopted and applied by the English court of chancery. *East In. Com.* v. *Vincent.* 2 *Atk.* 38.   While on this question, I hope it may not be deemed altogether impertinent to observe, that in the late digest of the *Hindu* law, compiled under the auspices of sir *William Jones*, the question before us, is stated and solved with a precision, at least equal to that in the Roman code, and it is in exact conformity with the English law.   On a sale declared void by the judge for want of ownership, the seller is to pay the price to the buyer, and what price asks the *Hindu* commentator ? Is it the price actually received, or the present value of the thing ?  The answer is, the price for which it was sold ; the price agreed on at the time of the sale, and received by the seller, and this price shall be recovered, altho' the value may have been diminished.   1. *Colebrook's digest* 478, 9.  Before I conclude this head, I ought to observe, that in the present case it does not appear that any *beneficial improvements* have been made upon the premises since the purchase by the plaintiff, and although some of my observations have been more general than the precise facts in the case required, yet the opinion of the court is not intended to be given or to reach beyond the case before us.

2—The next point arising in this case is, whether the plaintiff is entitled to recover interest upon the purchase money, and the costs of eviction ? It is evident, that originally the vendee recovered only what was deemed equivalent to the purchase money

without interest; for he recovered other lands equal only in value to the lands sold, at the time of the sale. The rule would have been the same at this day, had not the action for mesne profits been introduced, which takes away from the purchaser the intermediate profits of the land. As long as he was permitted to reap the rents and profits, they formed a just compensation for the use of this money. Whether the action for mesne profits has not been carried too far in our law, by extending it to all cases, instead of confining it to a *mala fide* possession, it is now too late to inquire. I should have strong doubts at least, upon the present rule, if the question was new, but considering it as the established rule, that the action for mesne profits lies generally, I am of opinion that the seller is as generally bound to answer for the interest of the purchase money, and that the interest ought to be commensurate, in point of time, with the legal claim to the mesne profits. This right to interest, rests on very plain principles. The vendor has the use of the purchase money, and the vendee looses the equivalent by the loss of the mesne profits. The interest ought to commence from the time of the loss of the mesne profits. That time is not specifically stated in the present case, and the presumption is, that they were recovered from the date of the plaintiff's purchase, and from that time, I think, the interest ought to be calculated on the consideration sum.

As to the costs of suit attending the eviction stated in the case, it is very clear that the defendants are responsible under the covenant, for the testator was bound to defend and protect the plaintiff and his assigns in the title he had conveyed. At common law, he might have been couched to come in, and been substituted as a real defendant in the suit. But the defendants are not answerable for the costs of the suit for mesne profits, as there the testator was not bound to defend.

My opinion accordingly is, that the plaintiff in the present case is entitled to recover the consideration paid for the moiety of the lot evicted, together with interest thereon from the date of the purchase, and the costs of suit in ejectment for the recovery of the same. *Livingston J.*

To find a proper rule of damage in a case like this, is a work of some difficulty; no one, will be entirely free from objection, or not at times work injustice. To refund the consideration, even with interest, may be a very inadequate compensation, when the property is greatly enhanced in value, and when the same money

might have been laid out to equal advantage elsewhere. Yet to make this increased value the criterion where there has been no fraud, may also be attended with injustice, if not ruin. A piece of land is bought, solely for the purposes of agriculture ; by some unforeseen turn of fortune, it becomes the site of a populous city, after which an eviction takes place. Every one must perceive the injustice of calling on a *bona fide* vendor to refund its present value, and that few fortunes could bear the demand. Who for the sake of one hundred pounds would assume the hazard of repaying as many thousands, to which value the property might rise, by causes not foreseen by either party, and which increase in worth, would confer no right on the grantor to demand a further sum of the grantee. The safest general rule in all actions on contract, is to limit the recovery as much as possible to an indemnity for the actual injury sustained, without regard to the profits, which the plaintiff has failed to make. unless it shall clearly appear, from the agreement, that the acquisition of certain profits depended on the defendant's punctual performance, and that he had assumed to make good such a loss also. To prevent an immoderate assessment of damages. when no fraud had been practised. Justinian directed that the thing, which was the object of contract, should never be valued at more than double its cost. This rule, a writer on civil law, applies to a case like the one before us ; that is, to the purchase of land which had become of four times its original value; when an eviction took place ; but, according to this rule, the party could not recover more than twice the sum he had paid. This law is considered by *Pothier* as arbitrary, so far as it confines the reduction of the damages to precisely double the value of the thing, and is not binding in *France ;* but its principle which does not allow an innocent party to be rendered liable beyond the sum, on which he may reasonably have calculated, being founded in natural law and equity, ought in his opinion to be followed, and care taken that damages in the cases be not excessive. Rather than adhere to the rule of Justinian, or leave the matter to the opinion of a jury, as to which may, or may not be excessive, some more certain standard should be fixed on. However inadequate a return of the purchase money must be in many cases, it is the safest measure that can be followed as a general rule. This is all that one party has received, and all the actual injury occasioned by the other. I speak now of a

case, and such is the present, where the grantee has not im-proved the property by buildings or otherwise, but where the and has risen in value from extensive causes. What may be a proper course, when dwelling houses or other buildings, and improvements have been erected, we are not now determin-ing. Why should a purchaser of land recover more than he has paid, any more than the vendee of a house or a ship? If these articles rise in value, the vendors would hardly, if there be no fraud, be liable to damages beyond the prices they had received with interest and costs, unless the plaintiffs could shew some further actual injury which they had sustained in con-sequence of the bargain. The English books afford but little light on this point, although it is understood to be the rule in *Great-Britain* to give only the consideration of the deed. The only thing to be found any ways relating to the subject, is in the year books in *Hilary term*, 6 *Edward II. Part* 1. 187. It is there said, that in a writ of dower after the land had been been improved by the feoffee, they shall be extended or set off to the widow, according to the value at the time of aliena-tion, and the reason assigned by *Hargrave* in his notes on *Coke* on *Littleton*, which is not however found in the year book, is " that the heir not being bound to warrant, except acording to " the value of the land at the time of the feoffment, it is un-" reasonable the widow should recover more of the feoffee than " he could, in case of eviction, of the feoffor." In *Connecticut*, on the contrary, damages are ascertained by the value at the time of eviction, because of land's increasing worth, which is the very reason perhaps it should be otherwise. And although the English practice be adverted to by the court in giving its opinion, it is supposed to be founded on the permanent value of their lands ; but when we recollect that this has been the rule in *Great-Britain*, at least from the commencement of the fourteenth century, since which time lands have greatly advanced in price, we must attribute its origin to some other cause ; probably to its intrinsic justice and merit. Even in *Connecticut*, the rule applies only to actions on covenant of warranty, and probably not to those on covenant of seisin, because, in the latter case it is sup-posed the party may immediately acquaint himself with the strength of his title, and bring his action as soon as he discovers it is defective. This reason is not very satisfactory, for with all his diligence a long time may elapse before his title is called in question, or doubts or suspicions raised about its validity.

NEW-YORK,
May 1805.

B. G. Staats
v.
Executors of
Ten Eyck.

*Kirb. Rep.* 3.

Without saying. then, what ought to be the rule, where the estate has been improved after purchase, my opinion is, that where there has been no fraud, and none is alleged here, the party evicted can recover only the sum paid, with interest from the time of payment, where, as is also the case here, the purchaser derived no benefit from the property owing to a defective title. The plaintiff must also be reimbursed the costs sustained by the action of ejectment. It was his duty to defend the property, and the costs to which he has been exposed being an actual, not an imaginary loss, arising from the defendant's want of title, he ought to be made whole. In costs are included reasonable fees of counsel, as well as those which are taxable. If a grantee be desirous of receiving the value of land at. the time of eviction, he may by apt covenants in the deed, if a grantor will consent, secure such benefit to himself.

The other judges concurred.