## *SUPREME COURT OF JUDICATURE*

OF THE

## STATE OF NEW-YORK,

IN FEBRUARY TERM, IN THE THIRTY-THIRD YEAR
OF OUR INDEPENDENCE.

———

ALBANY,
February, 1809.

Pitcher
v.
Livingston.

## PITCHER *against* LIVINGSTON.

In an action
for breach of the
covenant of *sei-
sin* and for *quiet
enjoyment* in a
deed, the plain-
tiff can recover
only the consi-
deration money
paid, with inter-
est and the costs
in ejectment.
He cannot reco-
ver damages for
the *improve-
ments* he has
made, nor for
the *increased
value* of the
land.

THIS was an action of *covenant.* The declaration con-
tained two counts ; the first was for a breach of the cove-
nant of *seisin,* the second for a breach of the covenant for
*quiet enjoyment,* contained in a deed from the defendant to
the plaintiff, dated the 17th *June,* 1801, for certain lands
in *Queensbury,* in the county of *Washington.* The
cause was tried at the *Washington* circuit, before Mr. Jus-
tice *Thompson,* and a verdict taken for the plaintiff, for
2,521 dollars and 75 cents. The covenants were proved
to have been broken, and two questions were raised at the

ALBANY,
February, 1809.

Pitcher
v.
Livingston.

trial; 1. Whether the plaintiff was entitled to recover interest on the consideration money;

2. Whether he was entitled to recover damages for the *improvements* made by the defendant, and for the increased value of the land.

The judge was in favour of the plaintiff on the first question; but gave no opinion on the second. It was agreed, that a verdict should be taken for the plaintiff; and if the court should be of opinion, that the plaintiff was not entitled to *interest*, that then the sum of 183 dollars and 75 cents should be deducted from the amount of the verdict: and that if the court should be of opinion that the plaintiff was not entitled to recover for the *improvements*, then the further sum of 925 dollars should be deducted from the verdict; and if the court should be of opinion, that the plaintiff was not entitled to recover any thing for the *increased value* of the land, that then the further sum of 750 dollars should be deducted from the verdict.

*Foot*, for the plaintiff. I shall contend that the plaintiff is entitled to recover the improved value of the land at the time of eviction. In the case of *Staats* v. *The Executors of Ten Eyck*,[*] this point was not decided, but still remains open for discussion.

[*] 3 *Caines*, 111. See also 2 *Mass. Rep.* 433 *and* 4 *Dallas*, 445. *Bender* v. *Fromberger*.

[THOMPSON, J. In that case, the court decided, that the plaintiff could not recover the *increased value of the land*. Nothing, however, was said as to the *improvements* made by the purchaser.]

The action of covenant, and a writ of *warrantia chartæ*, are different. The latter had reference to the time of the warranty made, and the compensation consisted in giving to the feoffor, lands of the warrantor, equal in value to those from which the feoffee was evicted. Where the feoffee could have the benefit of the writ of *warrantia chartæ*, no action of covenant would lie.[†] The covenant of seisin, and for quiet enjoyment, are distinct: the one relates to

[†] *Comyn, Cov.* A. 4.

the title; the other to the possession. For a breach of the former, the proper measure of damages, is the consideration or value expressed in the deed; but in regard to the latter, the covenant cannot be said to be broken, until the grantee is evicted, and the damage which he sustains, is the value of the property at the time he is turned out of possession.

ALBANY,
February, 1809.

Pitcher
v.
Livingston.

In the case of *Staats* v. *The Executors of Ten Eyck*, the plaintiff was allowed to recover, in addition to the money paid, the interest, and costs of defending the action of ejectment, including counsel fees. Beneficial improvements arise from the money laid out on the land by the purchaser; and he is as justly entitled to recover for money so laid out, as for money paid to counsel for defending the action. The increased value of the farm will also arise from the labour and agricultural improvements of the grantee. The labour bestowed by him is equivalent to money laid out on the property in any other way. By compensating him for the money he has expended, in proper, reasonable, and substantial meliorations, he will receive nothing for any fanciful or ornamental improvements, or for any extraordinary rise in the value of the land.

A court of chancery will compel the specific performance of a covenant or agreement, so as to render complete justice to the party; and, by analogy, a court of law ought to render the same justice, by compensating the party in damages for the non-performance of the covenant. In the case of *Taylor* v. *Debar*,[*] where there was a covenant for further assurance, the vendor having sold a bad title, he was decreed to convey a good title, which he, afterwards, had acquired, by the payment of a sum of money, from the king.

[*] 1 *Ch. Ca.* 274.
2 *Ch. Ca.* 212.

The covenant for quiet enjoyment was not broken until the eviction, and the true rule of damages is the value of the thing at the time the contract is broken.

*Slosson*, contra. The plaintiff, in this case, claims, besides the consideration money, the interest, compensation for the improvements, and the increased value of the land. The question is of great importance to the community, and

ALBANY,
February, 1809.

Pitcher
v.
Livingston.

\* *Cruise*, tit. 36, c. 5. s. 57. 1 *Inst.* 384. *a.* n. 1. 2 *Caines*, 193.

it was thought to have been settled by the case of *Staats* v. *The Executors of Ten Eyck.* I shall endeavour to show, from authority and reason, that the true and only measure of damages is the consideration money.

It is not pretended that there was any fraud or concealment on the part of the vendor. If there had been, the vendee might bring an action on the case, in the nature of an action of deceit.\* In an action of covenant, the plaintiff cannot recover damages for a deceit.

The covenant of seisin extends to the whole title, and is paramount to the other covenant, for if the title fails, the possession will be lost also. The covenant of seisin draws after it the covenant for quiet enjoyment. *Omne majus continet in se minus.* The covenant must be construed according to the state of things at the time it was made. The grantor covenants that he is seised of the land then sold, and that the grantee shall enjoy it, as then conveyed. The parties agree on the value of the land at the time, and the covenant extends to the value, as well as to the subject matter, at the time of sale. The subsequent alterations or improvements which the grantee may think proper to make, form no part of the subject matter of the contract. The covenant cannot extend to the houses and fences he may erect, or to the dykes and ditches which he may make on the land. If a slave has been sold for a certain price, and after the vendee has clothed him in a sumptuous livery, the true owner should reclaim and take the slave, can the vendee recover any thing for the livery? The subsequent additions or improvements form no part of the subject of the contract of sale.

† 2 *Lev.* 68. S. C. 1 *Vent.* 223, 224. *Bac. Abr. Cov.* F.

In *Davenant* v. *The Bishop of Sarum*,† a covenant to pay all taxes during the term, was held not to extend to any new tax created by parliament, but to such taxes only as were then in use ; yet this covenant was prospective.

‡ 1 *Vern.* 217.

In *Speake* v. *Speake*,‡ where the husband covenanted that the lands settled as a jointure, were of a specific value, and the court decreed that the covenant should be performed *in specie*, the value of the lands was estimated as they were at

the time of the settlement, and not according to their value at the time of the decree.

ALBANY,
February, 1809

Pitcher
v.
Livingston.

In *Berty* v. *Dermor*,* Lord *Holt* says, that if lands to the value of 100*l.* a year be devised to another, " the best rule of valuation is to estimate them at the value they were at the time of the death of the devisor."

\* *12 Mod. 526.*

Where a man made a feoffment in fee, to hold on the service of paying, at a certain time, the value of the annual profits of the land, the court held, that the value should be intended to be the value at the time the feoffment was made, and not as it was improved by succession of time.† This was a covenant in regard to annual profits, and several hundred years had intervened between the time of the feoffment and that of bringing the action, and the annual value had greatly increased. The court very properly looked to the state of things at the time of the feoffment, without regarding any subsequent fluctuations in the value.

† *2 Leo. 147.*
*3 Leo. 114.*

The ancient distinction between a covenant and a writ of *warrantia chartæ*, arose from the little value of money at that time compared with land, and when money was regarded as no equivalent for land. It cannot apply at the present day, when real estate is less respected, and the party is allowed a compensation in money. In case of a warranty the tenant was to receive lands of the warrantor equal in value at the time the warranty was made.‡ And where he had no lands in the same county, an extent issued, to ascertain the value.§ The point was expressly decided in the *Year-Book*, 30 *Ed.* III. 14 *b.* that where a person enters into a general warranty, he shall recover in value, according to the value at the time he entered into the warranty.¶ The same principle was recognised in *Humphreys* v. *Knight.* (*Cro. Car.* 456.) It is also to be found in 6 *Ed.* II. 187. and the decision is commented upon by Mr. Justice *Livingston*, in giving his opinion in *Staats* v. *Ten Eyck*, and such has been the uniform rule in *England* since the reign of *Henry* II.

‡ *Glanv. lib. 5.*
*c. 4. Fleta, lib.*
*6. c. 23. s. 2.*

§ *Fleta*, lib. 6.
*c. 23. s. 3, 4.*

¶ *2 Roll. Abr.*
*772. (T) 773.*
*(U) 19 Hen. VI.*
*46. 61.*

If any one ought to pay for the increased value of the land, or the improvements, it should be the person who re-

covers the possession, for he alone is benefited. The co-
venantor who has acted innocently and *bona fide*, ought not
to be made liable beyond the consideration money, or the
value at the time of the conveyance. Any argument de-
rived from the hardship of the case, is as strong in favour
of the grantor as the grantee. If all improvements are to
be paid for, there can be no certain measure of damages,
nor any limitation as to the extent. The rule of the civil
law, which limited the recovery to double the value of the
land, was manifestly arbitrary and unjust. To adopt any
other rule than the one taken by the court in the case of
*Staats* v. *Ten Eyck*, would prove ruinous in the extreme.

VAN NESS, J. Although it is not expressly stated in the
case, I shall assume the fact to be, that the declaration con-
tains an averment that the plaintiff had been evicted, in con-
sequence of a total failure of the title derived to him under
the deed from the defendant. This fact being assumed,
there is no difference between the present case and that of
*Staats* v. *The Executors of Ten Eyck*, (3 *Caines*, 111.) ex-
cept, that, in this case, beneficial improvements have been
made by the plaintiff upon the property, the value of
which he contends he is entitled to recover. The case just
mentioned is among the most important and interesting, of
any that have ever been brought before this court for de-
cision; and, accordingly, it appears to have received the
most deliberate consideration. I not only submit to the
authority of that case, but I take this occasion to express
my perfect acquiescence in the reasons, upon which the
determination of it appears to have proceeded. The co-
venants upon which the breaches were assigned in that case,
were the same as in the present, viz. the covenant of seisin,
and for quiet enjoyment. The court decided, that the da-
mages, which the plaintiff was entitled to recover, were to be
limited to the consideration expressed in the deed, with the
interest thereon, and the costs of suit attending the eviction.
But in addition to the sum which the plaintiff, according to
this rule, would recover, he contends that the defendant is

bound to indemnify him for the loss of his improvements. These are estimated at 925 dollars; and the only point left open to discussion, is, whether he has a legal right to demand this sum?

In *Staats* v. *The Executors of Ten Eyck*, the court determined, that the plaintiff was not entitled to recover any damages on account of any increased value of the land: Here a distinction is attempted to be made between an appreciation of the land itself, and that appreciation of it which is produced by the erection of buildings, or the labour bestowed upon it in clearing, and cultivating: a very nice, and, as I apprehend, a speculative distinction, to which it would be difficult, if not, in most cases, impossible, to give any practical effect, without danger of the most flagrant injustice. The reasoning of the judges, whose opinions are reported in the case alluded to, goes very far, if not conclusively, to prove, that such a distinction is utterly without foundation. The admission that it might possibly exist, has probably given rise to this action, which, otherwise, I believe, would not, after that decision, have been brought. One, and perhaps the principal reason, why the increased value of the land itself cannot be recovered, is because the covenant cannot be construed to extend to any thing beyond the subject matter of it, that is, the land, and not to the increased value of it, subsequently arising from causes not existing when the covenant was entered into. For the same reason, the covenantor ought not to recover for the improvements; for these are no more the subject matter of the contract between the parties, than the increased value of the land. The doctrine contended for by the plaintiff's counsel, is, that the damages sustained by the covenantee at the time of the eviction, ought to be the measure of compensation. Most clearly, then, the increased value of the land is as much within the reason of this rule, as the improvements; and upon the same principle that the covenantee is entitled to the one, he is to the other.

But if the value at the time of eviction is to be the mea-sure of damages, upon what principle is the consideration and interest, as such, recoverable in addition to the im-provements? These must be laid out of view; and the then value be ascertained without reference to them. Be-sides, if, in determining the rule of damages, the *increase* of value is to be taken into view, by parity of reasoning, it would be proper, and what would be required by a just reciprocity, to take into consideration any contingent *dimi-nution* of value. (*Ersk. Inst.* 206.) But this has never been heard of nor pretended. No such principle is to be found in the common law, notwithstanding these covenants have been in use upwards of two hundred years. I think this circumstance affords an argument against the measure of da-mages insisted upon by the plaintiff, and which, of itself, is nearly decisive, that the rule is without legal foundation.

In illustration of my opinion on this part of the argu-ment, I will state a case. A. gives a conveyance, containing covenants of seisin and for quiet enjoyment, of a house and lot. The house constitutes two-thirds of the whole value. The house is afterwards burnt. Then the grantee is evicted for a failure of the grantor's title. He then resorts to both his covenants, which, of course, are broken, for in-demnity. What would be the measure of damages? the value of the lot, at the time of eviction, being one-third of what the whole cost him; or the value, as ascertained and agreed upon by the deed itself? No doubt the latter. Whenever the grantee's title has proved to be entirely de-fective, and there is an eviction consequent thereon, the grantee has a right to rescind the contract, and then, as in other cases depending on the same principle, he recovers back, upon his covenants, what he has paid, with the in-terest. (1 *H. Bl.* 17. *Fielden* v. *Starkin.* 2 *W. Bl.* 1078. *Flureau* v. *Thornhill.*)

In the case just put, I have supposed, that both the co-venants of seisin and for quiet enjoyment were broken, and that breaches for both were duly assigned; and I have shown that, if the value of the property at the time of evic-

ALBANY,
February, 1808.

Pitcher
v.
Livingston.

tion is to be the measure of damages, it necessarily follows, that such diminished value is all which ought to be recovered. It is conceded, that, upon the covenant of seisin only, the recovery is to be confined to the consideration and interest. On the covenant for quiet enjoyment, therefore, the plaintiff must rely, to recover compensation for his improvements. Let us then examine whether, consistently with certain fixed legal principles, the covenantee can recover a greater sum of damages in any case under the covenant for quiet enjoyment, than under the covenant of seisin?

An eviction must be shown before a suit can be maintained on the former covenant. Not so, however, as to the latter; for that is broken, if the grantor has no title, the moment the deed is delivered; and the grantee has an immediate right of action. Whenever the eviction is occasioned by a total want of title in the grantor, then both the covenants of seisin and for quiet enjoyment, are equally broken; and the grantee has his remedy on both. If he proceeds upon the first, he shall recover the consideration expressed in the deed, and the interest. But if he proceeds upon the last, it is said he shall recover according to the value at the time of eviction; and, as I have before remarked, he must be content to recover according to the then value, even though it amounts to one half only of the consideration expressed in the deed.

The case would then stand thus. When the deed contains both these covenants, if the property at the time of eviction be worth one half of the consideration and interest, the grantee may, notwithstanding, upon the covenant of seisin, recover the whole consideration and interest. But if the property happen to be worth double the consideration money and interest, by reason of the improvements made thereon, he may waive the covenant of seisin, and resort to the covenant for quiet enjoyment; and thus recover the whole amount. Can this be possible? It appears to me,

that to give such an effect to these covenants, is not reconcileable with any principle of law or justice.

My understanding of the nature of these covenants, when both are contained in the same deed, is this: That the covenant of seisin, which relates to the title, is the principal and superior covenant, to which the covenant for quiet enjoyment, which goes to the possession, is inferior and subordinate. And I am not aware that a case can possibly occur, where the grantor can recover a greater amount in damages for the breach of the latter than of the former; though there are many cases where he may recover less. The suit here is brought upon both covenants; and both, in consequence of the total failure of the defendant's title and the eviction, have been broken. The plaintiff, accordingly, has a right to recover on both; but as the amount of the recovery would, according to my ideas, be the same on each, he must elect on which of them he means to rely, and take nominal damages on the other. The plaintiff is entitled to but one satisfaction, and he has his remedy on either of the covenants, at his election, to obtain it. It will hardly be said, that he can have judgment for the same sum on both the covenants.

The covenant against incumbrances stands upon a different footing, and is governed by different principles. That is strictly a covenant of indemnity; and the grantee may recover to the full extent of any incumbrances upon the land, which he shall have been compelled to discharge. But even there it will be found, that the same rule prevails, in fixing the amount of damages, as in actions upon the covenants of seisin and for quiet enjoyment: that is, the party recovers what he has paid, with the interest, and no more.

But I consider the question arising in this cause as settled by authority; and that, according to established rules of law, the plaintiff is not entitled to any thing more than the value of the land, as settled by the consideration in the deed.

In suits upon the ancient covenant of warranty, beyond all dispute, the recovery was restricted to the value of the land at the time of making the covenant. Cases have occurred, in which the value of the land has been enhanced by subsequent beneficial improvements; but the rule as to the extent of satisfaction, has continued inflexibly the same, without regard to the increased value, by whatever cause it may have been produced. A personal action will not lie, on the covenant of warranty, upon the eviction of the freehold; (*Bac. Abr.* tit. *Cov.* C.) and for which reason, upon the introduction of alienations by bargain and sale, new covenants were devised, but solely for the purpose of securing to the bargainee the personal responsibility of the bargainor, in case of a failure of his title. I think I am warranted in saying, that it never was designed, by the insertion of these covenants, to establish any other rule of damages than what previously existed; because there is nothing in the terms of the covenants, from which an intention to extend the liability of the covenantor can be inferred; but the contrary is to be presumed, as not a single case is to be found where such a construction of these covenants, which were in a great measure substituted for the covenant of warranty, has ever obtained. The covenant for quiet enjoyment, as I have before remarked, is that upon which compensation for the improvements is to be recovered, if at all. This covenant has a more strict analogy to the ancient covenant of warranty, than any of the other modern covenants. If, then, on the covenant of warranty, the satisfaction recovered in land was to be equivalent to the value of the lands granted, as it existed at the time when the covenant was made, I do conceive, that we are bound to adopt a correspondent rule, when satisfaction is sought to be recovered in money, in a personal action, on the covenant for quiet enjoyment.

Such a rule, moreover, I consider to be conformable to the intention of the parties. I question if one grantor out of ten thousand enters into these covenants with the remotest belief, that he is exposing himself and his posterity

ALBANY, February, 1809.

Pitcher v. Livingston.

to the ruinous consequences, which would result from the doctrine contended for by the counsel for the plaintiff. By giving this doctrine our sanction, we should, in my apprehension, create a most unexpected and oppressive responsibility, never contemplated by the parties, and inflict an equally unmerited punishment upon grantors acting with good faith, and having a perfect confidence in the validity of their title to the land, which they have transferred for what it is reasonably worth.

If any imposition is practised by the grantor, by the fraudulent suppression of truth, or suggestion of falsehood, in relation to his title, the grantee may have an action on the case, in the nature of a writ of deceit; and in such action he would recover to the full extent of his loss. (*Har.* and *But.* Notes to *Co. Litt.* 384. a. tit. *Warranty.* 1 *Fonb. Eq.* 366. *Com. Dig.* 236. A. 8.)

I am aware that it is difficult to lay down any general rule on this subject, wholly free from objection. This is a difficulty which has been felt by the profoundest jurists in all ages. I think, however, that the rule of the common law, which obliges the grantor, when he believes he has a valid title, and acts without fraud, to refund what he has received, with the interest, is as equitable as any that has ever been established; and that this is all which, upon principles of the most rigorous justice, ought to be exacted from him.

My opinion, therefore, is, that, in this case, the plaintiff is entitled to recover the consideration money expressed in the deed, with the interest, and the costs of suit following the eviction, and no more.

SPENCER J. It is submitted to the court, by the case made and argued in this cause, what is the correct rule of damages, upon covenants of seisin and for quiet enjoyment, contained in a deed conveying lands, in a case where the grantee has made improvements, and where the value of the land has appreciated. It is also made a question, whether

the plaintiff is entitled to recover interest on the considera-
tion money paid for the lands.

It is to be regretted, that the case is so loose in several
respects. It is fair, however, to infer, from the case as it
stands, and as it was argued, that, in point of fact, both co-
venants were broken ; that the plaintiff was evicted for defect
of title in the defendant, and that the plaintiff had made im-
provements, in the usual course of agriculture, on the lands
conveyed by the defendant to him, of a substantial kind, to
the value of 925 dollars.

The case of *Staats* v. *The Executors of Ten Eyck*,* de- * 3 *Caines*, 112.
cides two of the questions which arise out of this case. In
that case, though the value of the land had increased by
extrinsic causes, the plaintiff was allowed to recover only
the consideration paid, with the interest, costs, and counsel
fees. The interest was allowed, because the purchaser was
subject to an action for the mesne profits ; and in the pre-
sent case it is to be intended, that the plaintiff is liable to
pay them to the person who has the title, and consequently
it is to be allowed. It will be seen, that these two ques-
tions have received a similar determination in the supreme
judicial court of *Massachusetts*.† In the case, before cited, † 2 *Mass. Rep.* 433. *Marston*
of *Staats* v. *The Executors of Ten Eyck*, the court express- v. *Hobbs.*
ly reserved its opinion, upon a case like the present, where
beneficial improvements have been made on the premises
after the purchase. It was then considered, that there
might be a difference between the case of the rise in value
by the natural appreciation of lands, depending in a great
measure on ideal worth, and the case of improvements of a
beneficial kind.

This question I do not think has been settled in the
English courts. It has never been decided in our own, and
consequently it appears to me, that we are at full liberty to
fix a rule, which shall bear analogy to other cases, and attain
complete justice between the parties. I cannot pretend to
say, that the rule which I shall lay down will be free from
objection, when applied to all cases ; and I am not sensible
that any general rule, in almost any given case, will inva-

riably be free from exception. It is the very nature of ge‑ neral rules, sometimes to operate harshly; but the neces‑ sity of a fixed standard of justice is of more importance to the interests of men, than one that is capricious and fluc‑ tuating.

It has I think been erroneously said, that 'the defect of title is a case of mutual error ; on the contrary, from my observation and knowledge of the sale of lands, I think the defect of title is a matter generally and almost universally in the peculiar knowledge of the vendor. It is a rare case for a purchaser to investigate the seller's title ; and in most cases, it is impossible. The buyer relies on the allegations of the vendor, on his apparent responsibility to reimburse in case of eviction, upon his possession of the property, and emphatically on his covenants of title and for quiet enjoyment. These covenants, whenever they occur in a deed, seem to me to indicate, beyond all question, that the pur‑ chaser did not mean to rely on the title of the vendor alone, but that he meant to have his personal liability, as his gua‑ ranty. The language of the vendor corresponds with that of the purchaser, and holds out the idea that he had sold the land at his own peril, and that he would warrant it to be his. Extravagant cases have been put hypothetically, to shew the enormous injustice of the rule, that the vendor must be answerable for improvements. It has been asked, if a piece of land thus sold, with covenants, should become the site of a flourishing city, what fortune could, under a rule al‑ lowing for improvements, withstand ruin? It may be re‑ torted to such a question, what is to become of the indus‑ trious citizen or mechanic, who has spent his hard earnings in erecting his little house or workshop, relying on the co‑ venant in his deed, if he can only get back his purchase‑ money and interest? It is not fair, however, to test a rule by extreme cases. To settle a general rule wisely and equitably, we should have an eye to cases which generally occur, and not be startled, on the one hand or the other, by those occurrences which are rare and few. In general, the defect of title happens in sales between man and man,

where the improvements are of the ordinary and beneficial kind. If the improvements are merely to gratify the eye of the individual, and to pamper his vanity and pride, a jury would be warranted to take those things into consideration in their assessment of damages.

I lay it down as a rule, which cannot require much illustration to enforce it, on the score of analogy and justice, that in actions for a breach of covenant, the damages are to be estimated according to the value of the thing, when the covenant was broken. Thus, in a covenant for the delivery of specific property at a given day, in case of a failure, the rule invariably is, to allow in damages the value of the thing on the day it ought to have been delivered, and when the covenant was broken. So, also, on contracts for the delivery of stock, the value at the time it ought to have been delivered, and even at the time of trial, has been the criterion of damages. (2 *Burr.* 1010. 1 *Str.* 406. 2 *East*, 211.) In the present case, the defendant covenanted that the plaintiff should quietly enjoy the land sold. This covenant was violated, when the plaintiff was evicted ; and he has lost, by the breach of the covenant, not only the quiet enjoyment of the land, but the usufruct of those erections and improvements, without which, it is fair to say, that the land itself could not have been enjoyed, agreeably to the intention of the parties. It necessarily follows, that had the defendant kept his covenant and allowed the plaintiff to enjoy the premises sold, he would not have been deprived of those improvements made on the thing itself, the making of which was an inducement to the purchase. How it can be called a severe doctrine to compel the vendor to respond in damages for ordinary and necessary improvements, I confess myself incapable of perceiving, when he has undertaken, for a price paid, to assure to the vendee the validity of his title. Very often, and perhaps generally, there is a want of due caution on the part of a vendor, who sells without title ; and not unfrequently there is a mixture of fraud, which sets detection at defiance. The rule I have advanced, whilst it will restore to the innocent

vendee no more than he has actually lost, will induce greater caution in sellers, who, if responsible only for the principal and interest, will find the selling of land without title an easy and excellent method of raising money, instead of resorting to borrowing.

It follows, from the view I have taken of this question, that the plaintiff, under the covenant for quiet enjoyment, may recover the improvements ; and that under the covenant of seisin he could not, unless the grantee was seised by virtue of the deed, and has been evicted under a title paramount. I have not entered into any examination of the ancient method of proceeding under the *warrantia chartæ*, and the rule which obtained in such case, under the writ of *cape ad valentiam;* because the covenants of warranty were then considered as real covenants binding only on the grantor and his heirs. It has, however, been urged that the introduction of the covenants of seisin and for quiet enjoyment, were substitutes for the covenant of warranty, and that the same rule ought to follow the substituted covenants. It appears to me much more proper to consider the introduction of personal covenants in the alienation of real property, as immediately assimilating themselves to other personal covenants and contracts, and as subject to the same rules of construction, and the same rule of damages, whenever they are broken. If so, the covenant for quiet enjoyment was not broken until the eviction, and the rule of damages would be the property lost at that time, which would include the price paid for the land, and the value of those erections and improvements which had been added at the plaintiff's expense. It is supposed, that though the covenants of seisin and for quiet enjoyment are distinct, and regard different objects, yet that where the first fails, the latter is merged in it. This principle strikes me as illogical, and unfounded in authority.

*Freem.* 450. pl.
612.
6 *Vin.* 426. pl.
20.
Ibid. 476. pl. 4.

There are authorities* which show, that where, in a deed, a man covenants that he hath a good right to convey, &c. and that the party shall quietly enjoy, one covenant goes to the title, and the other to the possession. And why a person who has broken two distinct agreements, should protect

himself from a responsibility on both, and be liable only on the least extensive one, surpasses my powers of comprehension. A case has been mentioned as decided in the supreme court of *Pennsylvania*,[*] as bearing on the present; it will be found to have been on the mere covenant of seisin, and power, &c. to convey in fee. The rule I have adopted meets that case, and is reconcileable with it, for there the covenant was broken as soon as it was made, and the damages then sustained were the consideration money and interest.

ALBANY,
February, 1809.

Pitcher
v.
Livingston.

[*] 4 Dal. 436.

KENT, Ch. J. The declaration in this case, is upon two distinct covenants in the deed, to wit, the covenant of seisin, and the covenant for quiet enjoyment ; and the verdict was taken for the plaintiff, subject to the opinion of the court, as to the rule of damages. We must take it for granted upon this case, and so it seems to have been understood and admitted upon the argument, that both covenants were broken, and the question, then, is, what is the measure of damages, when the two covenants are the subject of one action, and a breach of each has been duly assigned and proved ?

The case of *Staats* v. *The Executors of Ten Eyck*, goes very far towards a decision of this question. That was a suit upon the same covenants, and a breach of both was admitted. The point submitted was the rule of damages, " under the covenants mentioned in the deed." The court adjudged that the rule of damages was the consideration money and interest ; and I observed, in giving my opinion in that case, that the covenant for quiet enjoyment could have no greater operation, as to damages, than the covenant of seisin. Mr. Justice *Livingston*, who also gave his opinion, was silent upon that point ; but it was a necessary consequence of the judgment of the court, that the increased value of the land could not be recovered under either of those covenants. The doctrine that the measure of damages, under the covenant for quiet enjoyment, is to

be computed from the time of eviction, and to include the, then value, even when the title has totally failed, and the covenant of seisin broken, cannot possibly be reconciled with that decision. I do not wish, however, to rest my opinion in this case solely upon that authority. As the question is of great importance, I am content to re-examine it at large.

What would be the rule of damages under a covenant for quiet enjoyment, if a breach of that covenant was shown which did not amount to a breach of the covenant of seisin, or if that covenant stood alone in a deed, unaccompanied with the covenant of seisin, is not a point at present before us. If, however, it stood alone in a deed, I should think, as at present advised, that upon a total failure of title, the damages would be the same as in the covenant of seisin, and no more, for the analogy is very close between that covenant and the ancient warranty. But when the covenant for quiet enjoyment follows a covenant of seisin in the same deed, the intent of the instrument, taken together, appears manifestly to be, that the one covenant is merely auxiliary to the other, as the one covenant relates to the title, and the other refers to the future enjoyment of that title. The covenant for quiet enjoyment respects the possession merely, and it would seem to be unreasonable and very inconsistent, for the plaintiff to recover under one covenant the whole value of the estate, as it was intended to be conveyed, and under another covenant in the same deed, distinct and increased damages, because, he was not permitted to enjoy that estate. These covenants must be taken in connection, to ascertain their import. The covenant for further assurance is one of these secondary covenants, and if the grantor had no title, and the value of the land was recovered back by the grantee, he could not be called upon in damages for further assurance. This would be very idle when it had been ascertained by the recovery under the principal covenant that he had nothing to assure. If the grantee recovers what is to be deemed, upon established principles, the value of the land, under the covenant of

title, it amounts, in effect, to a satisfaction and extinguishment of the covenants relative to the possession, and the grantee cannot receive any thing more than nominal damages under those covenants. There is no precedent to authorise any greater recovery, under the covenant for quiet enjoyment than under the covenant of seisin ; and the universal silence in the books on a point which so frequently gives occasion for litigation, is a strong argument to prove that no such rule exists as that contended for by the plaintiff. I believe it has never been the received opinion with us, that in a deed containing the usual covenants, viz. the covenant of title or seisin, and the covenant relative to the possession, the latter covenants, in a case of no title, and consequently of a breach of the covenant of title, would become paramount covenants and afford a larger claim for damages. The latter construction would not only introduce a rule hitherto undiscovered in the common law of England, but a rule of great moment in its immediate consequences to the community ; and I must be thoroughly persuaded of the soundness of the construction, either upon authority or principle, before I can consent to adopt it. When, therefore, there is no authority for such a construction to be met with in the decisions at Westminster-Hall, and it appears to be repugnant to the natural and reasonable interpretation of the covenants, as found in connection in the same deed, I must adhere to the opinion which I gave in the case of *Staats* v. *The Executors of Ten Eyck*, and which must, from a view of that case, have been also the unanimous opinion of the court.

The case before us, then, resolves itself into this question, What is the extent of the rule of damages on a breach of the covenant of seisin ?

Three points are submitted by the case :

1. Whether the plaintiff can recover interest on the consideration paid ?

2. Whether he can recover for the *increased value* of the land ? and

3. Whether he can recover for his *beneficial improvements ?*

The two first points were settled in the case of *Staats* v. *Ten Eyck*, and need not again be examined. Nothing has been shown which affects the accuracy of that decision on those points, and it deserves notice as being of great weight in support of that decision, that in the states of *Massachusetts* and *Pennsylvania*, the same rule of damages is established in an action for the breach of the covenant of seisin. The third point was reserved in the consideration of the former case, and no opinion expressed upon it. It, therefore, remains open for discussion.

I must own that I never perceived any ground for a distinction as to the damages, between the rise in the value of the land, and the improvements. There is no reason for such a distinction, deducible from the nature of the covenant of seisin. Improvements made upon the land were never the subject-matter of the contract of sale, any more than its gradual increase or diminution in value. The subject of the contract was the land as it existed, and was worth when the contract was made. The purchaser may have made the purchase under the expectation of a great rise in the value of the land, or of great improvements to be made by the application of his wealth, or his labour. But such expectations must have been confined to one party only, and not have entered as an ingredient into the bargain. It was the land and its price, at the time of the sale, which the parties had in view, and to that subject the operation of the contract ought to be confined. The argument in favour of the value of the land, and the improvements as they exist at the time of eviction, has generally excepted cases of extraordinary increase, and of very expensive improvements. It seems to have been admitted, that, without such a limitation to the doctrine, it could not be endured. But this destroys every thing like a fixed rule on the subject, and places the question of damages in a most inconvenient and dangerous uncertainty. We have a striking illustration of this in the *French* law. The rule in *France*, upon *bona*

ALBANY,
February, 1809.

Pitcher
v.
Livingston.

*fide* sales, according to *Pothier*, (*Traité du Contrat de Vente*, No. 132 to No. 141.) is to make the seller, on eviction of the buyer, refund not only the original price, but the increased value of the land, and the expense of the meliorations made. He admits, however, that the intention of the parties is to be the rule in the assessment of damages, and that, in the case of an immense augmentation in the price of the land, or in the value of the improvements, the seller is to answer only for the moderate damages which the parties could be supposed to have anticipated when the contract was made. It is plainly to be perceived, that there is no certainty in such a loose application of the rule, and that it leaves the damages to an arbitrary and undefined discretion, and so it appears to have been understood; for in the "*Institution au Droit François*," by M. *Argou*, (liv. 3. c. 23.) it is laid down, that "the question of damages, beyond the price paid, is with them *very arbitrary*." This is not consonant to the genius of our law, nor does it recommend itself well for our adoption. On a subject of such general concern, and of such momentous interest, as the usual covenants in a conveyance of land, the standard for the computation of damages, upon a failure of title, (whatever that standard may be,) ought, at least, to be certain and notorious. The seller and the purchaser are equally interested in having the rule fixed. I agree, that the contract is to be construed, according to the intention of the parties; but I consider, that the intention of the covenant of *seisin*, as uniformly expounded in the *English* law, is only to indemnify the grantee for the consideration paid. This was the settled rule at common law, upon the ancient warranty, of which this covenant of seisin is one of the substitutes; and all the reasons of policy which prevent the extension of the covenant to the increased value of the land, apply equally, if not more strongly, to prevent its extension to improvements made by the purchaser. A seller may be presumed, at all times, able to return the consideration which he actually received; but to compel him to pay for expensive improvements, of the ex-

tent of which he could have made no calculation, and for which he received no consideration, may suddenly overwhelm him and his family in irretrievable ruin. The common law never left the vendor in such a state of uncertainty; and it made no distinction between the natural rise of the land, and its increased value, by buildings, or other improvements. The *feoffor* was still to answer only for the value of the land, as it was worth when the feoffment was made. This was the amount of the decision in the *Year-Book*, 30 *Ed.* III. 14. b. A man had a wardship, and granted it over, with warranty, and, afterwards, the grantee was impleaded, and vouched the grantor. Now the wardship was of more value at the time of the voucher, than it was at the time of the grant, with warranty, by reason of other lands descending, afterwards, or by buildings or otherwise, and it was held, that the vouchee could take protestation of this matter when he entered into the warranty, *i. e.* when he was admitted to defend, instead of the original tenant. And *Burton* laid this down for law, that if land be better after the feoffment made by buildings or otherwise, he who receives in value, receives but according as the land was worth at the time of the feoffment, and not more. The same rule was laid down for law by *Newton*, J. in the *Year-Book*, 19 *H.* VI. 46. a. and again, in 61. a. and he says it had been so adjudged, and he refers to the decision in 30 *Ed.* III. which he said was not controverted. This rule, upon the sanction of these authorities, has been incorporated, as good law, into the Abridgments of *Fitzherbert*, *Brooke*, and *Rolle*. But the case of *Ballet* v. *Ballet*, (*Godb.* 151.) in the time of *Ja.* I. is a much more modern determination upon the same point. That was a case of a writ of *warrantia chartæ*, and, upon demurrer, the court held, that if there be new buildings, of which the warranty was demanded, which were not at the time of the warranty made, and the deed is shown, the defendant ought not to demur, but to show the special matter, and enter into the warranty for so much as was at the time of the making of the deed, and not for the

residue. Indeed, the point is too clear to admit of doubt, that the increased value of the land by buildings or other improvements, made no alteration, at common law, in the rule of damages; and, for the reasons given in the former case of *Staats and Ten Eyck*, it can make no alteration in the covenant of seisin, which, as to the rule of compensation, is commensurate only with the ancient warranty.

<div style="text-align: right">ALBANY,
February, 1809.

I am, therefore, of opinion, in this case, that the sum allowed for the increased value of the land, and the sum allowed for improvements, be deducted from the verdict, and that judgment be entered for the residue only.

THOMPSON, J. and YATES, J. concurred.

Judgment accordingly.