Curia, per

Evans, J.
The ground assumed in the notice of appeal, asserts, in substance, that the defendant, under his tavern license, had a general right to sell spirits in small quantities to travellers, guests and other persons.
I will not stop to enquire whether he who abides an hour at a tavern is not as much a guest, as he who remains a day, or a week; nor whether there be any distinction between furnishing spirits to a guest, as a part of his entertainment, (and increasing the charge so as to cover the expense,) and furnishing it to him separate and distinct from any other entertainment. The view which we take of the subject renders such inquiries unnecessary and unprofitable.
What, then, is a tavern; and what are the rights which a license to keep a tavern confers, as to the vending of spirituous liquors 1 Johnson, in his dictionary, says, “a tavern is a place where wine is sold and drinkers are entertained ;” and *221 Webster says, a tavern is “a house licensed to sell liquor in small quantities, to be drunk on the spot, and, in some of the United States, it is synonymous with inn, or hotel, and denotes a house for the entertainment of travellers, as well as for the sale of liquors.” Johnson, for his definition, gives Shakspeare’s authority. It is clear, from the writings of that poet, that such was the popular sense of the word in the time of Elizabeth, and Johnson’s adoption of it, shews that its meaning was unchanged when he published his dictionary, in the reign of George II. The popular sense, in America, is clearly shewn by Webster’s definition.
It will not be questioned that, if a word, having a clear and definite meaning in common parlance, be adopted into the law, it shall be construed according to its usual meaning; unless it appear by the lawgiver in a different sense. Let us, then, enquire whether the word, tavern, is used in our law in a different sense, or in a more restricted one than its popular meaning as above stated. I begin by saying what will not be controverted, that, at common law, the vending of spirituous liquors was not a franchise, and therefore required no license ; and, as a corollary to this proposition, that until the Stat. 5 and 6 Ed. 6, c. 25, the vending of wines and other liquors was as lawful as the selling of meats or grain, or any other article of traffic. That it is within the power of the Legislature of this State to controul, to regulate and even to prohibit both the sale and the use of intoxicating drinks, it is not intended, here, to question. All that is meant to be asserted, is, that prior to that statute, there was nothing in the law which laid any restraint upon such traffic, and that it may still be carried on in all cases and under all circumstances that are not in violation of that, or of the subsequent statutes passed upon the subject.
At a very early period of the history of man, houses were set up for the purpose of vending wines and other liquors. These had, originally, their appropriate names, as inns, *222 taverns, ate houses, punch houses, victualling houses, porter houses, &C; I should infer, from what is said in Viner, (14 Vin. 439,) under the head of “ Tavern,” that the original employment of the keeper of a tavern was to sell wine alone $ but, in process of time, these originally distinct employments became confounded; The seller of wines began to supply food and lodging for the wayfaring man; and, hence, the word tavern, came to mean pretty much the same as inn, at a period certainly as far back as the days of Elizabeth. Be that as it may, in our Acts of the Legislature, the word inn, has been mostly disused. It is to be found only in the Act of 1784, where it is manifestly used as synonymous with tavern. In the subsequent legislation on this subject, all other descriptive terms are discontinued, and all who are required to take a license are classed under the two heads of tavern keepers and retailers of spirituous liquors. I have gone through the legislation on the subject, in order to shew that inns and taverns are synonymous, or nearly so ; and I now proceed to shew that all legislation upon the subject has proceeded on the ground that a tavern, or an inn was a house where, according to Johnson, “ wine was sold and drinkers entertained.”
The oldest legislation upon this subject, as I have before said, is the stat. 5 and 6 Ed. 6, c. 25, by which the keepers of ale houses and tippling houses are prohibited from carrying on their business, unless permitted by the sessions, or by two justices, who are required to take recognizance against gaming and for good order. The stat. 1 Jac. 1, c. 19, recites “ that the ancient true and principal use of inns, ale houses and victualling houses, was for the receipt, relief, and lodging, of wayfaring people, travelling from place to place,” and not “ meant for harbouring lewd and idle persons,” to “ spend and consume their money and time in a lewd and idle manner.” This statute, following up the preamble, prohibits the inhabitants of the place where such houses are situated, front *223 resorting to, or “ haunting ” them, as it is expressed. The stat. 4 J. 1, c. 5, for repressing “the odious .and loathsome vice of drunkenness,” is to the same effect. The stat. 1 Car. 1, c. 4, prohibits the keeping of inns, ale and victualling houses from suffering any one to tipple in their houses ; and the second clause extends the previous Acts of James I, to keepers of taverns and such as sell wines and keep wine and victuals in their houses. It is obvious, from the reading o.f these statutes, that an inn keeper was one whose business consisted, in part, in vending spirituous liquors, as well to the inhabitants of his town, or village, as to the traveller and wayfaring man ; and, although the stat. 1 Jac. 1, c. 19, recites that the ancient true and principal business of inns and ale houses was for “ the receipt, relief and lodging of wayfaring people,” yet it is obvious, from the Act itself, that, at that time, a part at least, if not the “principal” part of their business, was to supply the traveller, as well as the inhabitants of their town, with the means of “ spending their money and time in idleness and drunkenness.”
The first statute passed upon this subject, after the settlement of Carolina, was in 1694, (2 Stat. So. Ca. 85.) It recites that the “ unlimited number of taverns, tapp houses and punch houses, and the want of sobriety, honesty and discretion, in the owners and masters of such houses, have and will encourage all such vices as usually are the productions of drunkenness.” It then goes on to enact that no person “ shall sell any wine, sider, beere, brandy, rum, punch, or any strong drink under the quantity of three gallons, until he shall have obtained a license, &e. In the next year, the same, in almost the precise words, was re-enacted, (id. 113,) with an additional clause fixing the price at which wines and other liquors should be sold. It was again re-enacted,, in 1703, (id. 198,) and 1709, (id. 336,) and made perpetual in 1711, (id. 362.) This closes the legislation of the Lords Proprietors. One general remark applies to all these statutes. They *224 declare it unlawful to sell wines and other liquors without; but leave it, as it was before, lawful to sell them with a license. The inference is clear and unquestionable, that a tavern was then understood, by the lawmakers, to be a place where wines and other liquors were sold. The only legislation of the regal government are the Acts of 1740 and ’41-2. By the first, every keeper of a “ tavern,” or punch house is prohibited from giving, or selling any spirituous liquors to a slave. The Act of 1741-2, requires the justices of the peace to meet in their- respective parishes twice a year, to inquire into the qualifications of “such persons as shall desire licences to retail strong liquors,” and to grant certificates, or orders to the public treasurer for granting licenses as aforesaid.”
The next clause prohibits the public treasurer, or receiver from granting “ licenses to sell spirituous liquors, or strong drink, or to keep a billiard table without an order for that purpose, signed and subscribed by the justices so assembled, and being and residing in the parish where the person, or persons so licenced shall or propose to keep a tavern, or punch house, or billiard table.” By another clause of the same Act, the street, lane, alley, road, bridge, ferry, village, town, or other place, where the “ tavern ” or punch house, or billiard table is to be kept, shall be particularly mentioned and specified, both in the order and the license. Can there be a doubt, that in these statutes, taverns are spoken of as places where “strong drink” and “spirituous liquors” are soldi
The first Act on this subject, after the revolution, is that of 1784. It provides that, (except in the parishes of St. Philips and St. Michaels,) “ two or more magistrates for the respective districts of this State shall be authorized and empowered, on every Easter Monday, and the first Monday in August, to grant certificates to any person or persons in their respective districts, who may apply for the same, it in their judgments, they shall think such person or persons fit and qualified to keep a tavern, inn, ordinary, punch, ale house, or *225 billiard table, or to retail strong liquors as aforesaid; and the person or persons to whom such certificate shall be by them granted, shall produce the same to the clerk of the court of the district in which he or she shall reside and the clerk is required “to grant a license under his hand and seal, agreeable to the purport of the said certificate, to such person or persons, who are to pay to the clerk one dollar for his trouble, and also the sum of three pounds for every license to retail liquors, and the sum of ¿£50 for every license to keep a billiard table.” On this statute, I would observe that the certificate is to be, that the applicant is a fit and proper person to keep a tavern, inn, ordinary, punch, ale house, or billiard table, or to retail strong liquors, and the license is to be agreeable to the purport of the certificate ; so that he who applies to keep a tavern, shall have a license for that purpose, and so of the rest. But, in the subsequent part, where the amount to be paid is fixed, all these various licenses are included under two classes; viz. to retail strong liquors, and to keep a billiard table. Now this must mean that the keepers of taverns, inns and ordinaries are to pay nothing for their licenses, or that they are included in the general “license to retail strong liquors.” The latter, it seems to me, is the obvious meaning, and is in conformity with the previous legislation on the subject. The county court Act, (1 Brev. Dig. 418,) gives to the justices of that court power to grant licenses to keep taverns and public houses, and the justices are required to cause a fair rate of meat, drink and lodging and provender for horses to be made and ascertained, and the tavern keeper is required to affix the same in the most conspicuous part of his most public room, for the inspection of “ all persons calling at the said tavern.” He is also required to give bond to keep clean and wholesome meat, drink and lodging for travellers, and the usual provender for horses. The Act of 1788 extends the jurisdiction of the county court, over taverns, to all persons who shall retail any brandy, rum &c. Here, for the *226 first time, those who are required to take out licenses are divided into two general classes; 1st. those who keep taverns* and 2d. those who retail any wine, rum, brandy, &c. The Act of 1781 makes no alteration in the existing law, except to authorize the county court to grant licenses at any court held in the year.
On the abolition of the county courts, their power was transferred to the commissioners of roads. By the Act of 1801, (1 Brev. Dig. 420,) they are required, at any stated meeting, to hear all applications for licenses to keep taverns and retail spirituous liquors, and are authorized to reject such application, or grant such license, as to them shall seem proper. Every retailer of spirituous liquor shall give bond according to law, and every person who shall obtain a tavern license, shall give bond with security, to keep clean and wholesome meat, drink and lodging for travellers, &c. In another clause, it is said that “all licensed retailers who do not keep, also, taverns and entertainment for travellers, shall pay $15 for their license, and shall not retail less than one quart.” To me, the obvious meaning of this is, that there are two classes of retailers, one who do not keep taverns and entertainment, and another who do keep taverns, and are required by law to give bond and security to keep clean and wholesome meat, drink, &c.; for the words “all licensed retailers who do not keep taverns,” imply that there are other licensed retailers who do. The first class is limited to the sale of one quart; the other, left unrestrained in quantity, as all retailers had been before that time.
From a careful review of all these statutes, I think the conclusion is, that a “ tavern is a house licensed to sell liquors in small quantities, to be drunk on the spot,” and “ denotes a house for the entertainment of travellers, as well as for the sale of liquors.” This is the American sense in which the word is used, according to Webster ; and, in looking into 2 Kent, Comm. 595, it will be found that the distinction between *227 tavern keepers and retailers of spirituous liquors, as is herein stated, is in conformity with the laws of New York, and of most of the States of the Union.
I have before said that, independently of the statutes which have been passed on the subject, a man might lawfully set-up an inn, tavern, or ale house, without a license. That is distinctly stated in 1 Burn’s Justice, 22, and 14 Vin. Ab. 436 and I think it is very clear; both from the English Statutes made of force; and from our own, that the sole object of bringing these establishments under the supervision of the civil authority, was to limit and repress, as far as practicable, the evils resulting from the use of intoxicating liquors. I do not understand that a boarding house, such as is found in any town or village, or that the houses on all the great highways,, where travellers are entertained with meat, drink and lodging,are required to be licensed. (12 Mod. 254.) These are,- in-some senses, inns and taverns, and the owners are entitled to some of the priviledges, and subject to some of the liabilities, of such employment; but they are not the kind of inns and taverns that come within the spirit and purview of the license law. Such, I believe to have been the universal understanding of the law upon this subject; and,- in no instance that I have known, or heard of has a license been taken out for any house of entertainment, except those in which wines and liquors were sold independent of, and unconnected with eating and lodging; The construction here put on our license law is in perfect consistency with the Act of 1816, “ the more effectually to prevent the pernicious practice of gaming,” and the Act of 1835, to “ amend the law' in relation to granting licenses to retail spirituous liquors;” and, so far as I can learn, it has been the uniform construction of the boards of commissioners of roads. They have always granted but two kinds of licenses, one called a retailer’s, and the other, a tavern license. Until within a few years, the commissioners generally granted tavern licenses to every shop keeper who *228 would give the bond required by law, to keep clean and wholesome meat, drink and lodging for travellers; and this pernicious practice, in some of the districts, is continued up to this time, although there is no pretence that such persons keep a tavern in the proper sense of the term.
From what has been already said, we may fairly infer, 1st. that to keep a house for the entertainment of travellers, or boarders, requires no license; 2d. that if, to such entertainment, be added the vending of spirits in small quantities, as is usually done at the bar of a tavern, then a license is necessary; 3d. that a licensed retailer, who does not keep a tavern, cannot sell under a quart; and, 4th. that tavern licenses are as much under the controul of the commissioners of roads as the licenses to retail.
Contrary to my usual habit, I have gone into much detail in the examination of this case. I have done so, not because there is any intrinsic difficulty in the subject, but because of the deep and exciting interest of the questions supposed to he connected with it. As a judge, it is my duty to expound, not to make, the law, dicere et non facere legem ; but, on this occasion, I have the consolation to know that there is nothing new in this opinion, nor any thing which will interfere with that great reformation in the habits of our people, which has already taken place.
It is the opinion of this court, that there was error in the charge of the circuit court, and a new trial is, therefore, ordered.
Richardson, Earle and Butler, JJ. concurred.
O’Neall, J.
in a case turning on the same point, delivered the following elaborate judgment, which may be appropriately regarded as his Honour’s dissenting opinion.