The opinion of the Court was delivered by
Mr. Justice Mott,
The covenant in this case is not in express terms a covenant of seisin, neither is it a covenant for quiet enjoyments The question therefore is, what is the effect of a covenant couched in the terms that this is ? If it was to be determined upon the authority of English decisions, perhaps the event would be doubtful, though there are cases in the English books which strongly favor the opinion attempted to be supported by the plaintiff’s counsel. (10 Mod. 142, Hobart 12. 1 Selw. 442. Carthew, 97. 1 Salk. 137. 1 Salw. 478.)
But we need not perplex, ourselves with a display o?' *188 legal-lore,since the question appears to have beenweif settled by the practice and decisions of our own Courts; In the case of Pringle vs. Executors of Witten, the Court held' that an action would lie before-eviction. (1 Bay, 256.) It is true, that in that case, the defendant’s testator had covenanted that-he was seized in fee. Butin the opinion" of the CSourt after ’observing, “ that in a covenant for peaceable enjoyment, oí on a general warranty, the action would not’ lie at Common Law, without a previous eviction.”' They say, “ in a case where title and quantity are both warranted that doctrine does not apply.” They further observed, “ in the'latter cases--wherever there is a covenant for good- title and -for the whole quantity, in each of these cases, the action of covenant" would lie,” without eviction. (1 Bay, 259.).
! I do not know what can be --meant by “ a covenant for good title-and for the whole- quantity,” if the covenant in question is not one. With regard to "what was- observed of a covenant for peaceable, enjoyment,--it was not a point before the Court j-tlierefore there was. no necessity-for the judgestohavegivenanopin-ionupon.it;-
The ■ case- of--the- Administrators- of Bell against the Administrators- of -Muggins, was aq. action of debt on bond for the .purchase money of a tract of- land in-which the defendant-was. allowed to set up the breach of warranty by way of -defence. (1 Bay, 326.) In that -case also, there was a covenant that the grantor was lawfully seized s And I quote it only to show that- the- ground taken was, that as the party was entitled to an action covenant before eviction, he was entitled under the same - circumstances to set up theibreach of covenant by way of defence. And I take it that the converse of -the proposition- would hold good; A party cannot avail himself of- such- a defence,-until the covenant is broken, and as soon as the covenant is broken, he is entitled to an action. • And if he can prove a breacji of covenant in one case by showing- a title paramount in another person, without eviction, he can irs the other. The principal in both is precisely the same-
Blanding, for the motion,
Mayrant'i contra.
in the case of Sumter vs. Welsh, (2 Bay, 558,) the action was for the purchase money, and the warranty was the same as in the case now under consideration, yet, the Court allowed the defendant to show a title paramount in another person, although there had been no eviction.
In the case of RAtchell and Vaughan, which was an action of the same description, thé sanie defence was allowed, although resisted on the same ground that the action now is. Since that time the cases have been numerous. ''They have indeed passed without opposition, because the'lawxvas thought to be too firmly established to be questioned. Nnd if we are to set afloat decisions which iiave been solemnly made, and which have been universally acquiesced in for fifteen years:, we shall never know when to consider the law as settled. These decisions are entitled to more than ordinary respect on account of the extensive class of'cases which they embrace.
The most of the deeds now drawn in this state are according'tothe form prescribed by the act of 1794, in which the covenant is in 'the same word? ¡as in the deed now before us, and this sort of defence is of puch frequent occurrence,-and that without any regard to the particular nature pf the covenant contained in the deed, that it may be considered as one of our best settled rules of law and practice: Indeed, it is a principle- so deeply ipgpfted into the body of our law, that to extirpate it, would be attended with mischief, little less than the abolition of the first rule of evidence.
I am of opinion, therefore, that the nonsuit ought tp be pet aside,
Justices Colcock, Johnson and Richardson, concurred.
Richard Furman vs. Jacob Elmore.
IN the Constitutional Court of Appeals, at Charleston, January, 1812. Motion to set aside the verdict obtained by the defendant, and for a new trial. ..
*190 Assumpsit tried in Sumter district, before the late Mr. Justice Wilds.
The material circumstances of the case are stated in the opinion of the Court.
In November, 1807', the motion was argued Columbia, by K. L. Simons, for the plaintiff, and Richardson, for the defendant.
It was again argued by the same counsel, at Charleston, by consent of parties, in January, 1812.
Simons, in support of the motion, stated and commented on the English doctrine of warranty, and the rule of compensation in cas.e of evic. tion, and cited 1 Reeves’ Hist. of Eng. Law 448. Co. Litt. 366. (a.) Hargraves' notes, 2 Blk. Com. 299. Warranty was incidental to homage, and vvas compulsory pn the lord. The statute of Quia Emptores required an express warranty.- The practice of subinfeudation was abolished by that statute. (Flureau vs. Thornhill, 2 Blk. Rep. 1078.) No damages were recoverable for the goodness of a barg-ain supposed to be lost. The money paid with interest and costs was all that was" recoverable, unless where there was fraud. The same doctrine has been recognized in the state of Massachusetts, (Marston vs. Hobbs, 2 Mass. T. R. 433, 439.) Where there h^s been a breach of covenant without eviction, the rule equally applies (3 New York T. R. 113, Staats vs. TenEyck’s Exors.) Chattels and lands are subject to the same rule, (Pitcher vs. Livingston, 4 John. 1. 4 Dall. 441, 439.) The improved value at the time of eviction ciinnot be the rule; but the value at the time of warranty. (22 Vin. Abr. 427. 4 Co. 121.) The Civil Law rule is not binding with us. The Virginia Law agrees with the English. (1 Henn. & Munf. 202.) The Law of Connecticut varies. (Kirb. 3, Swift’s Syst. 138.) Decisions of the Courts of this slate (1 Bay 263) are not authoritative, and ought to be revised. (1 T. R. 5, Poelnitz ads. Corbett, Domat 77, &c. 81.) The Civil Law rule does not extend to this case.
Richardson, contra. The feudal doctrine of exca-mbi-um and all its ‘ inconvenient consequences has been exploded. (2 Blk. Com. 299.) Covenants concerning- lands are personal, and satisfaction is due for 8 false warranty. (2 Mass. T. R. 433. 2 Blk. Rep. 1078. Kirb. Rep. Gore vs. Brasier, 3 Mass. T. R. 543.) The recompence ought to be proportional to the injury or loss. Domat 79, lays down the true moral rule, also Liber et ux. vs. Parsons, 1 Bay’s Rep. 19. Chambers vs. Griffiths, 1 Esp. Rep. 152.
Mr. Justice Brevard
delivered his opinion as follows:
This was an action of assumpsit to recover sixty-two pounds five shillings sterling and interest upon a promissory note of hand, made by the plaintiff’and payable to the defendant, being part of the consideration for three several tracts of land sold by Josiaii Turman, deceased, to the defendant.
Josinh Furman, the plaintiff’s brother, bargained and sold the said, lands to the defendant, to whom he gave a bond for a considerable snip *191 ar money, with a condition underwritten to make titles; particularly ■describing the several tracts, but never executed the titles according to, such condition.
After his death, the plaintiff and Mrs. Haynesworth, the daughter of the deceased, together with her husband, Henry Haynesworth, executed titles to the defendant to the said lands, as his heirs at law : And the note, on which this action was brought, was given sometime after-wards in part consideration of the same lands.
The general issue was pleaded to the action, and notice given, according to the Act of Assembly, “ for allowing of discounts,” (1759. See Public Laws 246, 1 Brev. Dig. 237,) that at the trial a deficiency in the quantify of the land sold and conveyed, of seven hundred acres, would be insisted on by way of discount.
At the trial a deficiency of five hundred and twenty-four acres was proved; occasioned by a prior conveyance from Mr. and Mrs. Hay nes-worth, to Mr. .-Newton, of that quantity of acres which was v-dueled in the conveyance to the defendant, being part of one of the throe tracts conveyed to him by the defendant, and Mr. and Mrs Haynes-worth for thirteen hundred acres, granted by the state to the aforesaid Josiah Furman.
On the part of the defendant, it was contended, that a reasonable deduction ought to be made from the consideration of the whole land sold, equivalent to the value of the land lost by the failure of title. It was not contended, that the whole contract ought to be rescinded in consequence of that partial failure.
The principal point in dispute was concerning the rule of law by which the discount was to be governed, and a standard by which a compensation for the deficiency of the land was to be measured.
The witnesses who gave evidence in relation to the value of the parcel of land taken off'by the prior conveyance, disagreed in their testimony. One of them said it was worth from three quarters of a dollar to three dollars per acre. Others said it was worth from one shilling and six pence to three shillings and six pence per acre. They all concurred, however, in saying there was a bay and several ponds on the land, and that the same was not valuable but for the timber trees growing on it.
A verdict was found for the defendant, for one hundred, and twenty dollars-.
This sum, added to the principal and interest of the note of hand, on which the action was brought, and which is extinguished by the verdict, amounts to upwards of five hundred and seventy dollars; which: is said to be a sum somewhat exceeding that which was the consideration agreed on for the purchase of the whole tract of thirteen bundled acres: And although the value of lands of this sor, may have increased in value since the sale, it has not been pretended, that the lands in question have been improved at the expense of the defendant.
*192 For the plaintiff it was insisted, that it was not competent for th? Jiiry,,upon any correct rule of law, to allow for the deficiency more than the price given, for the land deficient, or its relative value, at the tíme óf the sale.
On the contrary, it was contended for the defendant, that the jüst rule of compensation, for a loss of this sort, must be the value of the thing lost at the time of proving the loss, and awarding compensation.
| On the argument in support of the motion in this Court, for a new trial, it was objected, that no discount was legally admissible. The-discount Could only be claimed, it Was said, upon the ground of a right to recover damages for a breach of covenant, either in the bond of Josiali Furman or the deed of conveyance from liis heirs; and that his breach of covenant (if any existed) could not be set off against the plaintiff in an action Of assumpsit on a note of hand. And it has been further objected, that admitting the propriety of such a discount in general, yet no discount ought to be made in this case, a's it did not appear, that the plaintiff’s deed of conveyance contained a covenant of Seisin, nor that the defendant had been evicted, or even disturbed in his possession, or any attempt tb take possession of the land in question.
To the.first of these objections the .same answer may be given, which was given to a similar objection, in the cases of Sumter vs. Welsh and Vaughan vs. Mitchell, determined in the Court in November, 1806.
It Was said that our discount law is' more, extensive than the English statutes of setroff, (2 Geo. 2, and 8 Geo. 2,) and not only allows the defendant to give in evidence, by way of discount, any cause, matter, or thing (having respect to the cause of action) but makes it lawful if the plaintiff is found to be indebted to the defendant, for the defendant to enter up judgment for the sum due, with costs of suit. That a contract to transfer titles to lands and warrant the same, and a contract to pay the consideration money, for such transfer or warranty, is in fact but one contract, the one being in consideration of the other, and therefore there is no impropriety or inconvenience in permitting the breach of contract on one Side from being set-off against a failure of performance on the other side.
The objection to the right of the purchaser of lands to a discount,’ against the claim of the seller for the consideration money, on the ground of a failure of title, before a legal eviction, was also made in the cases of Sumter vs. Welsh, and Vaughan vs. Mitchell, s.nd overruled.
In the case of Vaughan vs. Mitchell, it was objected, that the titles to the land could not be tried in a collateral way, upon a notice of discount.
The Court overruled this objection, and said,- that the act which declares, that ho claim to lands shall be valid which is not made by a suit at law, (Limitation Act, 1712,) was not intended to forbid any other method than that, by action of ejectment to determine contested *193 •claims to land, or contracts concerning land, but only to put a stop to the practice of entering on land and taking possession thereof, by the mere act of the claimant himself.
in the case of Sumter vs. Welsh, it was objected that the discount was not supported by any evidence of a lawful eviction, by an action at law, in which way alone, it was contended, the plaintiff could be rendered liable upon the covenants contained in the deed of conveyance from him to the defendant. In that case too, the deed did not contain an . express covenant of seisin; but it contained a general warranty of title.
To support the objection the case of Pringle vs. the Exors. of Witten, (1 Ray’s Rep. 254) was relied upon.
Blit it was the opinion of a majority of the Court, that a conveyance in fee-simple, for a valuable consideration, together with a warranty on the part of the grantor to defend the premises for ever against every person whomsoever, as well as his own heirs, is equivalent to an express covenant of seisin!
The law, it was said, would operate great hardship and injustice if, after a bargain and sale of lands in fee-simple by one pretending to have a good title and lawful authority to sell and convey,' it should appear that he had not a sufficient title or authority to sell, and the purchaser should be without a remedy unless he should be ejected by a recovery at law, which might not happen during his life; and therefore it was considered that a just construction of the deed of bargain and sale, or lease and release, containing the usual warranty of title without any express covenant of seisin, will render the vendor responsible for a failure of title as effectually as if an express covenant of seisin were inserted.
The opinion which was delivered as the opinion of a majority of the Court, (Waties, Bay, Brevard, and Wilds — Mr. justice Trezevant dissenting,) noticed the distinction between covenants of seisin and covenants for quiet enjoyment. The case of Hayes vs. Bickerstaff, f Vaugh, llá,) referred to in support of the decision of the case of Pringle vs. the Exon, of Witten, was a case of covenant for quiet enjoyment; and it was Held, that for the tortious entry of a stranger, the covenantor was not answerable, because he had a plain remedy against the wrongdoer, and it would be very unreasonable lo infer a warranty of peaceable enjoyment against the tortious act of strangers.
Numerous authorities might be cited to show, that in covenant for quiet enjoyment, the plaintiff must state by way of breach, and.prove that he has been evicted by some person having a better title. (1 H. Blk. 34. 4 D. & E. 617. 3 D. & E. 584. 1 Pow, on Contracts 378. Cro. Eliz. 212. Cro. Jac. 425, &c.)
But the reasons, on which this rule is founded, which are very obvious and cogent, do not seem to apply to a case like that under consideration. Even in an action for quiet enjoyment, if the disturbance proceeds from the covenantor himself, and not from a stranger, it is not *194 necessary to state or prove a lawful eviction. (1 D. & E. 671. 2 Show. 425. Cro. Eliz. 214.)
The general principles of law seem to favor the doctrine laid down in the case of Sumter vs. Welsh, though it must be confessed, that the doctrine of the English Ltwit, on the point in question, is directly against it.
In Bradshaw's case, (9 Co. 60. 2 Co. 72, b.) in a covenant contained in a léase, which stated, that the lessor had full power and lawful authority fro demise, the declaration was objected to, because it did not state what person had right, title, &c. at the time of the demise, but only that Bradshaw had not; but it was held' sufficient.
Grants are to bé construed strongly against the grantor; or cove-nantor. Upon a léase for y e'ars by words demise or grant, without any express covenant for quietly enjoying, the law will intend a covenant by inference, on the part of the lessor, that the lessee shall quietly hold, &c. (Cro. Eliz. 674. Fitz. N. Brev. 432. 1 Esp. Big. 366.)
And in Soke's case, (4 Co. 80. Carth. 98.) it is said the same words import a covenant in law, on the part of the lessor, that he has a good title.
It may be said, that there is a distinction between leases for years’ and conveyances in fee, and that the lessor stands on the same ground as a vendor of a personal chattel, who is always understood to warrant tile title of the thing sold. (1 Salk. 210. 1 Lord Raym. 593. 2 Lord Raym. 1182. 3 D. & E. 58. 3 Esp. Rep. 83.) It may be so, but the reason of the distinction is not clear.
Indeed there seems to be very little reason, if any, why there should be any distinction made in the warranty arising by implication of law, in the transfer of real and personal property, especially in relation tcf the title. If cannot well be presumed, that the seller does not undertake to convey a good title, and that he has of course, at the time of bargaining and conveying, lawful authority to sell; and that he has seisin or possession of the land, without which he would have no authority to sell and convey.
This is generally the understanding of parties in contracts of bargain and sale of lands in this country, and few purchasers, I believe, have any idea of the importance of a covenant of seisin, as laid down in the English authorities.
It may also be remarked, that a statute law of this state, passed' in the year, 1795, with the express inttot “to facilitate the conveyance oí real estates,” prescribes the form of a conveyance by way of release, as effectual to pass the fee-simple of land, which form contains nothing like a covenant of seisin. If it were considered as essential to guard the rights of a fair purchaser, or if the legislature did not intend to dispense with it, as unnecessary or superfluous, is it reasonable to presume, it would have been omitted ?
The doctrine of Warranty effecting landed property, however abstruse it may appear at the first view of the ancient English authorities, in *195 ¡ration to the point in question, is, I confess now clearly established. This doctrine 'seems also to have been recognized as the settled doctrine in several of the most enlightened of our sister states. (Co. Litt. 365. 2 Caines Rep. 188. 1 Mass. Rep. 464. 4 Cranch 430. 3 John. Rep. 471. 5 John. 120.)
According to this doctrine, unless the vendor covenant, that he is lawfully seised, and has good right and lawful authority to sell, no action can be maintained against him, before eviction; And a covenant of seisin cannot be implied from a general or special warranty of title. — (2 Bos. & Bull. 13. Doug. 654.)
it is however clear, that this doctrine is of feudal extraction, and therefore not entitled to our highest veneration. In tracing the origin of the doctrine to the obligation of the lord to defend the title of his tenant, and in case of eviction to accommodate him with another feif of equal value, we meet with a doubt of some importance, namely, whether he was bound to do this upon investiture alone, without an express promise to that effect, (Co. Litt. 365, in a note by Butler.) The better opinion seems to be that he was. Yet it does not appear, thsft the tenant liad any redress for a defect of title before eviction, or disturbance pf bis possession except upon an express covenant of seisin or quiet enjoyment. But a warrantee, or his heirs, might at any time before they were impleaded for the land, bring a vsarrantia chai\ tas, upon the warranty in the deed against the warrantor and his heirs, which bound all his lands by descent from the ancestor warranting.-— (Bac. Abr. Tit. Warranty.)
If adjudged cases are to be considered as settling the law, then our law is established somewhat differently from that which has just been stated; and all covenants of warranty must be regarded as personal covenants, for the breaph of which damages'are recoverable as in other contracts; and an action will lie for damages for an implied covenant of seisin|upon a deed of conveyance containing only the usual warranty of title.
In the case of Champneys vs, Johnson, determined in Charleston, in January, 1809, the duly was assigned to me to deliver the opinion of the whole court. The action was debt on a bond, given to secure the payment of a sum of money being the consideration of a tract of land; and the defendant claimed a recision of the contract on the ground of a total failure of title. On that occasion the opinion delivered, so far as it concerned the question now under review, seemed to be consented to by the whole Court, and was to this effect: “ That with respect to the question, whether the operation of a contract may he avoided in whole or in part, on the ground of an implied ivavgatnty on the part of the grantor or bargainer, if it were to depend on the law of England, no such warranty could b,e raised; for by the law of England, implied warranties can only arise from the known usages of trade, where both parties are presumed to have engaged on such terms, or where the vendor of a chattel undertakes to sell as having a good title, &c. But as to the soundness or sufficiency, qualities or qualifications of thé sub *196 ject of salé, no warranty is ever implied. If any deceit is practiced by the seller, it will be equivalent to an express warranty; but if there is no unfairness in the transaction, and both parties have an equal opportunity of áscerlaining the true situation,’ condition and qualities of the subject of sale, and either or both should be mistaken, the maxim caveat emptor inflexibly applies, and the purchaser is considered as suffering by his own neglect, in not having taken care to secure himself by an express warranty. (Doug. 20. 2 East 314. Cro. Jac. 474. 2 Blk. Com. 452.)
The same observation may apply to'the neg’lect of inserting a covenant of seisin in a deed of conveyance of lands' in fee.
“ Mr. Wooddeson, (2 Vol. Led. 415,) and Mr. Powell, (1 Powel on Contracts 150. See 1 Fonbl. 113. Í Loot’s Gilb. 191,J have indeed laid down a different doctrine, and seem to have adopted the broad and liberal rule 'of the civil law, which raises an implied warranty from the fairness and fullness of the price paid, upon this clear and reasonable ground, that, in the contract of sale, the'buyer’is not supposed to part with his money; hut in expectation of an adequate advantage or recom-pence. No authority' however is cited in support of this doctrine, which is contradicted by' an uniform current of decisions in the English Courts. These decisions go to establish this doctrine• That in the contract of sale, there must be either an express warranty of deceit, to entitle the vendee to redress, in case of unsoundneas or defect.' It may be doubted whether this established doctrine of English Law ever was received’and adopted in this state; but if it was, it has been long since repudiated and exploded. I am unable to say how, Or by what authority the more liberal rule of the civil'law has been introduced; but. certain it is, that it has long prevailed, and has constantly received the acquiescence ■ and approbation of the bar, and the community in general.*” ’
These observations apply equally to the covenant of seisin, which has never been Considered as esseh’tial iri’ our courts to authorize a remedy by 'action or discount, where' the purcflaser'has not been evicted. ’ The rule' of the civil law wlliclr implied a warranty in every sale, in respect to the title of the vendor, (2 Blk. Com. 452. Cro. Jac. 474.) has been constantly applied' as 'raising ah' implied covenant of seisin without opposition or murmur. 1 ha've n'ot been able however to trace the origin of its adoption, nor find the authority on which that adoption was founded; But ! can confidently sáy, that i’t has Been generally considered as settled lab" ever since I have known' ány thing óf the principles and practice of the law, that' is to say, upwards of twenty years: And I do not know tliat it was ever disputed or denied, till of late.
As in'quéfftions of property^' certainty is of incalculable importance, I am not prepared to say, that the determinations which have taken *197 plao.e, though they may he traced up to an' erroneous source, ought now to be departed from. I believe there will be more benefit derived from adhering to them, than by overturning them. Where a rule of law is firmly established, though on mistaken principles, and no greater evil is to be apprehended from an adherence to it, than may be expected from a departure from it, 1 shall always be an advocate for the rule stare decisis:
To‘legitimate the doctrine which has obtained, I would support it upon a presumption, which certainly would be extravagant in this instance, but which Lord Coke somewhere recommends as necessary and proper in support of right and furtherance of justice, that a legislative act once passed to authorize it, which cannot noto be found.
In tbe case of Johnson vs. J'fixon, decided in this court in November, 1811,' the same rule, which had always before been conformed to, was’ recognized. The action was on a promissory note, to which a discount was opposed, on the grouncí, that the note was given in consideration of land purchased from the plaintiff, and that the title was insufficient. The title was not, I believe, examined to see whether it contained a covenant of seisin. That circumstance was not regarded as material; and my brother JVolt, who declared the opinion of the whole court, laid it down clearly,-that the defendant was entitled to the discount claimed, though he had not been evicted or disturbed in his possession, as it was manifest, that tbe plaintiff' had sold and warranted a title to land which he himself had not a good legal title to or lawful authority to sell.
Upon the same principles, upon which that case was decided, if they ave to be regarded as correct, must tbe exceptions to the verdict in this case, v/hich are now tbe subject of examination, be disposed of ? A'discount, by our l.avv, may be considered as a cross action, and subject, to the' same rule^ of law which would be applicable in an appropriate action to recover the discount insisted on. Where money is demand-able by the terms of a contract, and suit is brought to recover it, the party entitled to a discount may oppose the plaintiff’s recovery on the same ground on which he would be entitled to recover back the money, in case it had been paid pursuant to the express terms of the contract. Therefore, if it appeared on atrial of this cause, that the defendant was entitled to damages upón a falsie or mistaken warranty of title by the plaintiffj for which the note in question was part of the consideration, amounting to a covenant oí seisin by construction and implication of law, those' damages were a proper subject of set-off' or discount, being damages arising from a breach of tbe same contract, upon which the claim of the plaintiff is founded.
Before I quit this part of the subject, I cannot forbear to remark, that from, the research which I have been able to make, our courts seem to'have carried the' remedy for a defect or failure of title, in respect to lands, to an extent which is not warranted' by tbe civil law, for by that law the buyer could not have recourse to the seller on bis warranty, till he was evicted or troubled in his possession, though he *198 was bound to warrant the buyer against eviction. (Domat L. 1 Tit, 2.) The buyer might, immediately aft er eviction, or trouble, give notice of it to the seller, who became party to the action.
In France, where the rules of the civil law generally prevail, the buyer may give notice of the action against him to evict him, and bring his action on the warranty against the seller, before judgment of eviction, so that both actions may be decided at the same time. (Pothier, Traite au Central de Vente, part 2, c. 1. Code Civil des Francais, L. 3, Tit. 6, c. 4. Co. Litt. 365. Sutler’s Note.)
In a country like ours, the rule by which a compensation in damages ísatonce recoverable upon an implied breach of covenant, whether the party has or has not been evicted, seems to be the best that could be devised, although the introduction and establishment of it may be questioned, as savouring rather of legislative than judicial power.
I am the more reconciled to the doctrine which has been established ■with us, when I reflect that it is uniform, consistent, and harmonious in its application to both real and personal property. If any little incongruities should be found to exist, they may easily be made to yield to the force of general and uniform rules. A warranty is always implied where a man undertakes to sell a chattel as his own, and the remedy for the deceit or mistake is prompt and effectual. The same rule applies to sales of real estate.
If the title totally fails, or very materially, the contract may be rescinded or avoided in toto ,• otherwise damages may be recovered for 'she defect or partial failure. In some of the books it is stated as a reason why the seller of a personal chattel is liable on an implied warranty of title; that possession of a personal chattel is colour of title; (1 Salk. 210. Bull. N. P. 30,) butthis is controverted by later authorities, and the action is held equally to lie, whether the seller is in or out of possession at the time of the sale. (3 D. & E. 58,) But possession of real property is as necessary and essential to the validity of the sale, as possession of personal property, and more so. (Stat. 32, H. 8, c. 9. Vide Public Laws 54. 2 Blk. Com. 2 Wooddeson, Plowd. 78. Dyer 74, 53. Co. Litt. 369, a.) Therefore the undertaking to sell and grant an estate in fee, necessarily assumes and affirms the right of possession as well as the right of property.
Having surmounted, with some difficulty, the exceptions to the verdict, founded on a supposed inadmissibility of the discount insisted on at the trial, I now approach the strong ground on which the plaintiff most confidently, and uot without good reason, relies in support of the motion for a new trial.
The Judge who presided in th,e district court, it seems, in his instructions to the Jury, laid down the rule of.compensation for the land deficient, to be the present value of the land so deficient, being taken off by the prior grant to Newton, and considered the proof of a better and adverse title existing in a third parson, as equivalent to a lawful evic. fien.
*199 The Jury, it is presumed, found a verdict in conformity to the direction of the court.
This rule of compensation has been objected to on several grounds; and certainly it must appear to be in many cases a most unreasonable and unjust rule. A tract of land which, at the time of sale, was v orth only one hundred dollars, or which may have been sold for one fourth of its value, may at the time of eviction (or trial of the cause, in which the title is shown to be invalid) be proved to be worth fifty times as much. A change of times, or accidental circumstances may enhance or reduce the value of lands, without any exertion or expense on the part of the purchaser, and without any' merit or fault of his. In such cases it would be hard to compel the seller to answer for the full value of property which has accidentally increased in price, or compel the buyer to receive only the diminished value which may have deteriorated by accidental causes, or sunk in value from the time he purchased.
A just standard o'f compensation ought not to vary with a change of times, nor vise and fall in consequence of fortuitous circumstances.
If the rule, as it was laid down, has been established by a uniform stream of decisions in this state, of sufficient magnitude and force to compel our acquiescence^ and there is less danger to be expected from conforming to them than from departing from them, it would be better undoubtedly, to adhere to them.
That there is no statute law of this state, nor any authority derived from the laws of England to support the rule, is quite clear.
The common law rule is, the value of the subject of sale, at the time of the contract of sale, or the price or consideration paid, and interest thereon from that time, together with the cos's of eviction, where the purchaser lias been legally evicted. (1 Reeves’ History of English Law 448. Co. Litt. 366. 2 Blk. Com. 299. 3 Caines’ Rep. 111. 4 Johns. 1. 2 Caines’ Rep. 192. 7 Johns. 258. 2 Mass. Rep. 433. 1 Henn. & Munf. 202. 2 Henn. & Munf. 164.)
This is the general rule. Where fraud has been practiced, relief may be had on that ground.
The bearing of this rule on particular cases would certainly be hard. Á purchaser may expend large sums in valuable and permanent improvements on land purchased, which may be all swept away from him by the superior claimant, and yet he would be entitled to the mone he paid for the land with interest and costs, and no more. I do not know how far a court of Equity, or even a court of law, might compel the real owner of land thus improved to compensate the innocent improver.
Xfthereisno remedy for the evil, and it should be found to merit legislative attention, I have no doubt a remedy will be provided.
But the decisions of our own courts, it has been urged, for a series of years past, have established a rule different from that which obtains in England, and which may have obtained here prior to the 'revolution' *200 which has become d settled rule of property, that ought not now to he overthrown.
If this indeed were the casej I should feel the necessity of yielding a reluctant submission to the rule thus established, however strong might he my desire to preserve from violation and corruption those rule a of law, which are venerable, not merely for their antiquity, but which have received the sanction of ages, the approbation of the learned and. the wise; and whatever repugnance might arise from seeing them laid prostrate, sophisticated or even amended by any other than legislative authority.
But, let us examine those decisions, and see how far they are entitled to that reverence which is claimed for them, and. what ought to be the extent of their controul. Let us see whether there has been such a train of concurrent adjudications, in number so many, pregnant with arguments so forcible, and sustained by authorities so respectable and pointed as to command our homage, and form a body of such weight and potency as to bear 'down and supplant a substantial ingredient in the solid fabric of the common law; a law which was received in this country at the dawn of its jurisprudence, as fhe palladium of our civii rights ?
The cases to which we have been referred, and it is presumed that no others can be adduced, are three in number. The first is Liber et ux. against the Executors of Parsons, (1 Bay's Rep. 18,) tried in the year, 1785, before Mr. Justice Pendleton. This was an action for a breach of covenant, after eviction, on a deed of conveyance of a lot or parcel of land. The rule for the assessment of damages, was the point in dispute. The counsel of the defendants contended for the established rule of the common law. The plaintiff's counsel insisted, that “the true rule was the value of the property at the time of eviction, with interest from that time.” Judge Pendleton is reported to have said, that there could be no doubt of" the correctness of the rule contended for oh the part of the plaintiffs; that purchases are always made with a view to the rise in the value of the thing purchased; and that the compensation ought to be according to the extent of the injury sustained.
Now, all this maybe true, and the position laid down’ by the learned Judge, as indubitable, may, to men more enlightened than myself, appear perfectly clear, but to me it remains as questionable as if his opinion had never been delivered. In saying this I mean nó reflection on Judge Pemlléton, whose memory I highly respect. I say so, because I do not perceive in his opinion as reported, any argument of sufficient force to convince my mind, that it is well founded. 1 do not see by wbat deductions tbe position is established. It is laid down as an incon. trovertible dogma, without even glancing at any authority to support it. Unless the solitary work of a French civilian, quoted by the plaintiff’s counsel, can be considered as entitled to that character.
But the rules of the civil law do hot warrant the measure of damages *201 laid down, as an uniform standard, (See Pothier on Obligations, part 1 No. 164. Poth. Traite du Contrat de Vente, No. 132, 141.)
The next case is Eveleigh vs. the Administrators of Stitt, (1 Bay 92.) This was an action to recover damages on the eviction of certain chattels, and being a case under peculiar circumstances, the court left the question of damages to the discretion of the Jury, without laying down any specific rule; and the Jury found accordingly what they considered an equitable verdict, conformable to no certain standard. The case is reported to have been “ a new one, and a kind of speculating contract, out of the usual course of things; without consideration passing from the buyers to the sellers, and without any view to the use and labour of the negroes;” and moreover, that it was one “which was likely to fall extremely hard on Burke, the only ostensible party in the transaction, &c‘” TJnder such circumstances, to be sure, it is no great wonder if the plaintiff' did not recover the full value of the property, for which he had given nothing; but it may be questioned whether, “ the case being a new one, and likely to fall hard on a particular person,” afforded sufficient ground for excepting it from the operation of the general rule, which is said to have been recognized by it, as established in the case of Liber et ux. vs. the Executors of Parsons.
Be that however as it may, it does not appear, that the latter decision sheds any light on the former, or communicates any vigor to it. All that can be collected from it, is, that wbaiever the general rulé oflaw on the subject, might be conceived to have been, the court did not feel itself bound by it on that occasion, and therefore rejected it as inapplicable to that case.
The next is the case of the Executors of Guerard vs. Rivers, (1 Bay 265.) This was an action of covenant, on a deed of conveyance of land, after eviction, decided in the year 1792.
The only question was the measure of damages. Mr. Justice Grimke was for adhering to the established rule of the Common law. Mr. Justice Waties was of opinion, “ that the value of the land lost by eviction, at the time of eviction; was the best general rule for the government of Juries, in cases of this nature; but that in special cases, the Jury might make the consideration money and interest the rule of compensation.”
The opinion of Mr. Justice Bay was, “ that the case of Liber et ux. vs. the Executors of Parsons, had settled the law on very just and legal principles. That the case of Stitt vs. Eveleigh, was an exception from the rule which had been settled, authorized by peculiar circumstances, in which the Jury had exercised a proper discretion, which had been acquiesced in by the parties.”
Now, there seems to be nothing in these opinions, independent of their being the opinions of respectable judges, to strengthen the decision’of Judge Pendleton, in the case before mentioned. They furnish no data by which their legal merits may be tested. The position of Judge Pendleton stands on the naked basis on which he placed it, unclothed *202 with even a ra¿- of authority, and unsupported by .any consequent reasoning.
The op'nirm of Judge Wa*ie,s goes rather to shake and subvert, than to strengthen and affirm it. He agrees that it may be the best general rule; but that in special cases it may be departed from. If the role is to be thus qualified, all its rigid fibres would soon dissolve like was and its energy be destroyed. It would .quickly be drowned in the multitude of exceptions, which would be, made to it, unless indeed the “ special cases” which ought to be considered as exceptions, could be accurately defined, so that they might be easily distinguished, and the reasons for excepting them clearly seen. But if this cannot be done, it would he better to leave, the rule as it has been transmitted to us, than by fancied improvements and crude amendments, to adulterate and spoil it.
From all these considerations, X have stated, and many more which might bo mentioned, if it were necessary, I am clearly of opinion, that the only legal standard of damages or compensation, in a case like the present, is that rule which was established in England, at the time when the common law of that country was adopted in this, and that it has, always remained the same : And further that the judiciary of this coun. try have pot, and never had any right or authority to substitute any other,
I shall not undertake to say to «hat point it might be wis$ in tfri legislature to change' or amend the rule; and whether it might not be better to adopt the rules of the Civil Law in relation .to this subject. I am however prepared to say decisively, that the rules of the Civil Law, as they were established in the ltonuin Empire, in the time of JustiniatH or as they prevail at this day in France, or any other country in Europe, are no ways binding on us, unless 'they have been incorporated in our code, and are part of the known and established laws of the land. Yet i think very highly of the Civil Law ; so far as I am acquainted with it, it appears to me tobe a most admirable and excellent system of rules, founded on the most solid and durable principles of jurisprudence and pure morality.
But if the Civil Law were to be óur guide iu the case now tó be decided, it is by no means clear that the verdict ought to stand.
By the Civil Law, as it prevails in France, the seller is bound to refund to the buyer on eviction, the original price, and also the increased value of the lands, together with the expenses of the improvements made. But this rule is qualified by the intention of the parties.
In case of^an immense augmentation in the price of land, or value of the improvements, the seller is only bound to answer for such moderate damages as the parties might be supposed to have anticipated when the contract was entered into, (Pothier, Traite du Contrat de vente. No. 132, 141.) The seller is not bound to restore the price paid, if the buyer knew at the time of the sale, the danger of eviction. If the buyer has derived a profit from the deterioration of the property, white *203 in iiis possession, the seller shall be entitled to retain of the price received, a sum equivalent to that profit. Ami the seller must reimburse the buyer all reparations and ameliorations made upon the land, or cause it to be done by the party who shall evict him. (Code Civil des Francais, L 3, Tit. 6, C. 4.)
Where no fraud is imputed to the party to perform the obligation, dam ages are not to be assessed above the value of the thing sold ; and is not liable for a rise in the price or value of the thing. (Pothier on Obligations, No. 164, 165.)
If the value of the thing diminishes before eviction the seller has the advantage of it.
According to our law, the principle upon which a claim to damages Is founded in a case like the present, being the breach of an implied covenant of seisin, the violation of the comract must be coeval with the date of the contract, and therefore cannot be oil ended to embrace causes arising afterwards. It is for this reason the increased pr diminished value of the subject of the contract cannot be admitted to enhance or reduce the quantum of compensation.
If the claim was founded on a warranty of title, or covenant to warrant, after eviction, then indeed there might be room to contend, that the compensation ought to be adequate to the real injury sustained in consequence of the eviction, and ought not to be restrained to the price paid and interest. I am not however prepared to say, that a different rule could be applied in that case, but 1 am clear, that it would be well if a different rule could be applied, especially where valuable improvements have been made by the purchaser pn the land, or whore it has been deteriorated by his use of it.
On questions such as those which are involved in the present case, where the law is somewhat uncertain, the responsibility which attaches to the magistrate who is in any degree influential in settling it, is a matter of serious concern. The anxiety which this reflection has produced in my mind, must be my apology for the enormous length and prolixity of this opinion, the result of which is, that the motion ought to be granted and a new trial awarded.
In the application of the rule which has been laid down, fpr the damages to be assessed in a case like the present, a difficulty may occur in ascertaining the amount of the sum to he refunded with interest. In the present case, three tracts of land were purchased, as forming one entire body of land, and a gross sum agreed on by way of consideration. There was no specification of the separate value of each distinct parcel, por can it be known what was the estimated value of the part lost by the grant to Newton, at the time of the sale to the defendant. This being the case, it must follow necessarily, that the price given for it must be ascertained by an average estimate of the whole land bought, formed from a comparison with the gross amount of the price agreed lo be given for it. (But see Briggs vs. Peay, ante 184. )
*204 This perhaps ought not to be the rule where the land lost is of unequal value with the land for whioh the title has not failed; but where the part lost and the part preserved are of the same or nearly the same average -value, the bes't rule appears to me, that which I have suggested. In case the land lost should be proved to be considerably inferior or Superior in value, at the time of the sale, to the rest of the land bought at the same time, or to be very unequal in their average value, then a better rule would be to leave it to the Jury to assess the value at the time of the contract, being guided in their assessment by the price or consideration given for the whole of the land purchased, (See 5 John, 49. 2 Henn. & Munf. 164.)
Justices Grimke, Brevard, Mill, and Colcock, present.
Justices Bay and Smith absent.
Note 1.—See 7 John. 258, Kent vs. Welch. (Citing 2 Caines R. 188. 1 T. R. 584. Cro. Eliz. 914. Cro. Jac. 425. 2 John. R. 1. Selw. N. P. 413.4 Co. 80.) 2 Binney, 49, Henry vs. Morgan. 7 Pothier on Obligation, n. 164, Part 1, n. 165. 4 John. 1, Pitcher vs. Livingston. 3 Caines 111, Staats vs. TanEyck. 1 Ersk. 206. 1 Kaime’s Equ. 284. 2 John. 484. Co. Litt. 193, 32, a. 2 Saund. 45, note. 5 John. 49, Morris vs. Phelps. 2 Esp. Ga. 639. 5 John. 120, Kortz vs. Carpenter. 3 John. 471. 8 Co. 89, b. 1 Com. Rep. 228. 1 H. Blk. 17. 4 Dall. 436. Co. Litt. 384, n. 1 Fonbl. 366. 2 Blk. Rep. 1078.
Mote 2. — See Doug-, 654. Bree vs. Ilolbeck; Admor. cum testam. anno. found a forged mortgage among testator’s papers and sold and assigned bona fide. It was held no fraud. The assignor, it was said, did not covenant for the goodness of the title. The plaintiff should have looked tothat. [The above case is from 4 Vol. Judge Brevard’s MS. Rep. 51. R.

 See Justinian’s Inst, by Cooper 272, and Note, p. 615. Dig. 2. 14, 7. 7. Big. 21. 2. 70. &c. The value is to be considered fit the time of eviction. Dig. 19. 1 45.