In the Matter of the Claim of ANNA SIVER MOYER against the Estate of JULIA BOYLAN, an Incompetent Person.

County Court, Madison County, July, 1922 (Received November, 1922).

Real property — deed — breach of covenant of seizin — damages — recovery limited to purchase price and interest.

The rule of damages for the breach of a covenant of seizin and for quiet and peaceable possession on a conveyance of real property is the value of the property at the time of the sale, and the purchase price is conclusively presumed to be that value.

On January 2, 1912, claimant, having purchased a farm from Julia Boylan, entered upon and remained in possession of the premises until on or about May 1, 1922, when she was dispossessed of the same under a writ of possession issued by a federal court in an action brought by the United States of America against claimant and her grantor, in which action it was adjudged that the title to the farm was in certain Indians and that claimant's grantor had no title to the farm when she conveyed it to claimant. *Held*, that upon a claim against the estate of the grantor of claimant, who had in the meantime been adjudged an incompetent, the claimant was only entitled to a judgment for the full purchase price, with interest from the date of the deed to her, less the amount unpaid on a mortgage held by the incompetent's estate against claimant.

While claimant was in possession of the farm she made improvements of a permanent nature and at the time of her eviction the value of the farm had nearly quadrupled, the increase being due to said improvements and the acceleration of farm values in the vicinity. *Held*, that no allowance could be made for such improvements and acceleration in value of the farm.

The deed to claimant being under seal, the six years' limitation as to the time within which an action could have been brought for breach of the covenant of seizin did not apply.

ACTION for damages for breach of covenant of seizin.

*H. W. Coley*, for claimant.

*Walter W. Wilcox*, as sole committee, in person.

*Coville & Santry*, for Charles R. Coville, special guardian.

35

SENN, J. This is a claim against the estate of the above-named incompetent and grows out of facts briefly as follows:

On January 2, 1912, Anna Siver Moyer, the claimant, purchased of the above-named Julia Boylan a farm of about thirty-two acres located in the outside tax district of the city of Oneida, for the sum of $1,200. Thereupon the claimant entered upon and remained in possession of the premises until on or about May 1, 1922, when she was dispossessed of the same under a writ of possession issued out of the United States District Court. The writ was issued in an action entitled "United States of America against Julia Boylan and Anna Siver Moyer," wherein it was adjudged that the title to the premises in question was in certain Indians and that said Julia Boylan had no title thereto when she conveyed the farm to the claimant. While she was in possession of the premises the claimant had made improvements of a permanent nature thereon costing about $2,000 and at the time of her eviction the value of the farm was about $4,500, the increase being due to the improvements and the acceleration of farm values in the vicinity.

The only disputed question is as to the measure of damages. The committee of the incompetent, as well as the special guardian, insist that the amount to be allowed as damages is the purchase price of $1,200 and interest thereon for not to exceed six years. The attorney for the claimant asserts that damages should be based on the value of the premises at the time of the eviction, or, if this is not allowed, that she should at least be allowed the amount expended for permanent improvements in addition to the purchase price.

The deed by which Julia Boylan assumed to convey the premises in question to the claimant contained the usual covenants of seizin and for quiet and peaceable possession, as follows: "And the said Julia Boylan does hereby covenant and agree to and with the said party of the second part, her heirs and assigns, that at the time of the ensealing and delivery of these presents, she is the lawful owner and is well seized, in fee simple, of the premises above described, free and clear from all lien, right of dower or other incumbrances and she has good right and full power to convey the same and that the premises thus conveyed in the quiet and peaceable possession of the said party of the second part, her heirs and assigns, will forever warrant and defend against any person whomsoever, lawfully claiming the same or any part thereof."

The liability of the incompetent's estate to the claimant rests wholly upon the covenants set forth and the failure of the grantor's title.

The rule of damages in such a case was for a time believed to be involved in a certain degree of uncertainty, but it is now well settled that where there is a breach of a covenant of seizin and for quiet and peaceable possession on a sale of real property, the rule of damages is the value of the real property at the time of the sale, and the price paid is conclusively presumed to be that value, probably on the theory that the parties, by agreeing on the price, are presumed to have agreed on the value and thus estopped themselves from questioning or denying the same. Where there is only a covenant for quiet and peaceable enjoyment, the breach is as of the time of the eviction of the purchaser; but where there is also, as in this case, a covenant of seizin and the grantor never had any title to the premises, the breach is as of the time of the sale.

In *Staats* v. *Executors of Ten Eyck*, 3 Caines, 111, a case recently cited by our Court of Appeals (See *Hunt* v. *Hay*, 214 N. Y. 578, 583), Kent, Ch. J., writing the opinion, among other things said: " At common law, upon a writ of *warrantia chartæ*, the demandant recovered in compensation only the value for the land at the time of the warranty made, and although the land had become of increased value afterwards, by the discovery of a mine, or by buildings, or otherwise, yet the warrantor was not to render in value according to the then state of things, but as the land was when the warranty was made.  *  *  *  This recompense  *  *  * consisted of lands of the warrantor  *  *  *  of equal value with the land from which the feoffee was evicted.  *  *  *  That this was the ancient and uniform rule of the English law, is a point, as I apprehend, not to be questioned; yet, in the early ages of the feudal law on the continent,  *  *  *  the lord was bound to recompense his vassal on eviction, with other lands equal to the value of the feud at the time of the eviction.  *  *  *  But there is no evidence that this rule ever prevailed in England  *  *  *.  In warranties upon the sale of chattels the law is the same as upon the sale of lands, and the buyer recovers back only the original price  *  *  *.  Upon the sale of lands the purchaser usually examines the title for himself, and in case of good faith between the parties,  *  *  *  the seller discloses his proofs and knowledge of the title. The want of title is, therefore, usually a case of mutual error, and it would be ruinous and oppressive, to make the seller respond for the accidental or extraordinary rise in the value of the land. Still more burdensome would that rule seem to be if the rise was owing to the taste, fortune, or luxury of the purchaser. No man could venture to sell an acre of ground to a wealthy purchaser without the hazard of absolute ruin."

Livingstone, J., said (p. 116): " Rather than adhere to the rule of Justinian [the value at the time of the eviction but not more than double the purchase price] or leave the matter to the opinion of a jury, * * * some more certain standard should be fixed on. However inadequate a return of the purchase money must be in many cases, it is the safest measure that can be followed as a general rule * * *. If a grantee be desirous of receiving the value of the land at the time of eviction, he may, by apt covenants in the deed, if the grantor will consent, secure such benefit to himself."

In *Hymes* v. *Esty*, 133 N. Y. 342, 347, Judge Maynard writing the opinion of the court refers to the rule as being somewhat unjust and arbitrary in its application, ordinarily excluding a purchaser from the benefits to which he would seem to be entitled from a good bargain, a rise in value, or on account of expenditures made for permanent improvements, unless the latter may be deemed a part of the price paid for the property. He states, " We cannot find that it has ever directly received the approval of this court."

Since the last-named opinion was written, the rule has from time to time been referred to by the courts of this state as being the law, and in *Hunt* v. *Hay*, 214 N. Y. 578, 583, it is restated and directly approved by the court. Judge Chase, writing the opinion of the court, in which all the judges concurred, reviewing the history and reasons for the rule, among other things said: " Where there is a complete breach of a covenant of warranty on the sale of real property the damage is the value of the real property at the time of the covenant * * * conclusively presumed to be the consideration of the sale. * * * The rules stated are arbitrary and arose from necessity."

I hardly think it was intended to intimate in *Hymes* v. *Esty*, *supra*, that money expended for permanent improvements was to be deemed a part of the purchase price. At best, it was only an intimation, and I cannot find in the thirty years since it was written that it has ever been quoted or approved in that regard in any reported opinion in this state.

In *Taylor* v. *Barnes*, 69 N. Y. 434, the rule is referred to as being very favorable to the covenantors, and holds it will not be applied to executory contracts where the vendor has sold lands to which he has not a perfect title, and where he undertakes to complete and perfect it. In such case there is an expressed agreement for indemnity against loss and the rule of damages is the value of the land at the time of the eviction. It is also held to be at least doubtful whether the general rule should be applied where the title fails through the fraud or fault of the grantor and covenantor.

In *Wilcox* v. *Campbell*, 106 N. Y. 325, it was held that where the grantor assumed and agreed to pay a mortgage incumbering the premises granted and the grantee lost the land conveyed to him through the foreclosure of the mortgage, the latter was entitled to recover his actual damages, probably on the theory that the agreement to pay the mortgage was to be considered an agreement to indemnify. See, also, *Jenks* v. *Quinn*, 137 N. Y. 223, 227.

But the cases last cited only constitute exceptions to the general rule which, under the overwhelming weight of authority in this state, I must follow. As stated in *Hunt* v. *Hay, supra:* " However inadequate a return of the purchase money must be in many cases it is the safest measure that can be followed as a general rule."

The circumstances of the incompetent's estate are such that the full amount claimed could well be allowed without hardship to the incompetent or those who are likely to inherit her property. If I was free to follow my own judgment or if I had any discretion in the matter, I would be impelled both in justice and common sense to allow the full sum of $4,500, with interest from the time of the eviction, for that is the true amount of claimant's damages, regardless of the annoyance caused by her forcible eviction from premises for which she had in good faith paid her money.

While I cannot allow the claim for improvements and acceleration of value, I think I can allow interest from the date of the deed in question, viz., from January 2, 1912. As stated in *Hilliker* v. *Reuger*, 228 N. Y. 11, 15, citing previous decisions of the Court of Appeals, if a covenant of seizin be broken at all, it is at the time of the delivery of the conveyance. Under the authority of *Hunt* v. *Hay, supra*, interest is allowable from the time of the conveyance. The deed in question is a sealed instrument and, therefore, the six years' limitation as to the time within which an action could have been brought for the breach of the covenant of seizin does not apply.

Claimant's claim is, therefore, allowed at $1,200 and interest thereon from January 2, 1912, less the amount unpaid on the mortgage held by the incompetent's estate against the claimant.

Judgment accordingly.